Everett Bunker and Verna Bunker v. The International Harvester Company of America, Appellant.

**Mortgages:** ASSIGNMENT: BONA FIDE PURCHASER. The recording statutes have no application to the transfer of instruments which are transferable by indorsement and delivery, so far as a subsequent purchaser is concerned. Thus, where the assignee of a note and mortgage procured the assignment from the mortgagee after he had indorsed the note in blank and delivered it with the mortgage to a third person, and while the latter was to his knowledge in possession thereof, he was not an innocent purchaser although the former assignment was not recorded.

**Same.** Where the assignee of a note and mortgage acquired the same, as in this case, subsequent to an indorsement of the note in blank and a delivery of it and the mortgage to a third person, under an agreement to find a purchaser of the note and to apply the proceeds to the payment of claims against the mortgagee and to account to him for the balance, an equitable interest only was thereby acquired, which could not be asserted against the rights of the original transferee; and where the original transferee in conjunction with the mortgagee induced the mortgagor to take up the note prior to maturity and used the proceeds accordingly, the subsequent assignee had no claim against him therefor, although he obtained less than the face of the note.

*Appeal from Ringgold District Court.*—Hon. H. M. Towner, Judge.

Monday, October 24, 1910.

Action in equity to quiet title to land and to remove a cloud therefrom. Decree for the plaintiffs. Defendant appeals.—*Affirmed.*

*Paschal & Dubach,* for appellant.

*Fuller & Fuller* for appellees.

EVANS, J.—Plaintiffs are husband and wife. The husband, Everett Bunker, is the owner of certain land, and for convenience of discussion our reference to the plaintiff will be confined to him alone. On April 19, 1907, he executed a negotiable note for $1,300 to one Blackman, payable in five years and secured by mortgage on his land. A few days later Blackman transferred this note and mortgage to one Fuller by blank indorsement of the note by delivery of the note and mortgage. Fuller was at that time agent and attorney for certain creditors of Blackman, and as such held claims against him for collection amounting to $911. The consideration for the transfer was that Fuller was to find a purchaser for said note, if possible, and was to apply the proceeds to the payment of the claims held by him against Blackman, and to account to Blackman for the same. In June, 1907, Blackman executed a purported written assignment of such note and mortgage to the defendant; the same being then in the actual possession of Fuller under the previous transfer. Such assignment was duly acknowledged, and the assignment was placed of record by the defendant  Such assignment was made to secure indebtedness owed by Blackman to defendant. In January, 1908, no purchaser having been found for the paper, negotiations were entered into with the mortgagor, the plaintiff herein, which resulted in his taking up his paper in advance of its maturity for an agreed price of $900. The claims of Fuller with accrued interest amounted to considerably more than this sum; but Fuller and Blackman both assented to the arrangement, and Fuller surrendered the papers and Blackman executed a formal release of the mortgage of record. The defendant, however, asserts a claim to the mortgage, under its purported assign-

ment and the plaintiff has brought this action to remove the cloud to his title caused thereby.

I. It is the first contention of the defendant that Fuller failed to put upon record any assignment of the mortgage to him, and that the defendant purchased without notice and that its claims are therefore paramount. This contention is wanting in merit. The paper was transferable by indorsement and delivery, and our recording statutes have no application to such a case so far as subsequent purported purchasers of the paper are concerned. If the defendant had been a subsequent purchaser or incumbrancer of the land, and as such had innocently relied upon a release by the mortgagee, a different question would be presented. In the case before us the defendant is in no sense an innocent purchaser either in fact or in law. It knew that the paper was not in the possession of Blackman when he executed the assignment, and it knew that it was in the possession of Fuller. The answer avers that the defendant was informed by Blackman that Fuller held the paper for collection, but no proof was offered of even such averment.

*1. MORTGAGES: assignment: bona fide purchaser.*

II. It is contended, however, that defendant acquired a lien on the mortgage by its assignment, and that its right could not be affected by any subsequent act of Blackman and Fuller and the mortgagor. In a legal sense defendant acquired nothing by its assignment. Its contract, however, was one of which equity could take cognizance, and could extend to defendant equitable relief thereunder  Neither in law nor in equity, however, could such relief be permitted to impair the rights already acquired by Fuller by the transfer to him. The most that equity could do in such a case would be to permit the defendant to take the balance of proceeds, which would otherwise have gone to Blackman, in case Fuller had realized out of the paper more than sufficient to pay the claims in his hands. No such situa-

*2. SAME.*

tion has arisen, and no showing is made which entitles the defendant to equitable relief. Doubtless a court of equity would require diligence and good faith on the part of Fuller in his efforts to realize upon the paper. Such diligence or good faith is in no manner challenged in this case. The evidence is undisputed that Fuller realized the utmost possible out of the paper. The mortgage was a third mortgage and made a total incumbrance of $4,850 on one hundred and twenty acres of land worth from $37.50 to $40 an acre. The mortgagor was without other means. In order to take up this mortgage at this price, he borrowed the amount upon the suretyship of a brother-in-law. The trial court found that $900 was the full value of the mortgage, and such finding was abundantly justified by the evidence. No right of the defendant, either in law or equity, has been infringed. The utmost that a court of equity could have done for it would be to give the margin over and above the claims held by Fuller. There is no claim that there has been any bad faith. The acts of Fuller were strictly confined to the authority conferred upon him before the defendant acquired its assignment. The claim which it now presents by its cross-bill is a mere form of right without the substance. Equity will not permit him to harass the mortgagor with a shadow nor to menace his title with a cloud. *Yoder v. Bank,* 142 Iowa, 223.

III. It is urged, in argument, that Blackman, and not Fuller, made the agreement with plaintiff Bunker, and that such agreement was therefore subject to the previous assignment made by Blackman. Blackman took the initiative in the negotiations with Bunker. He made persistent effort to realize a larger sum, but without success. The utmost that Bunker would do was to pay $900 to which Blackman on his part finally consented, and the matter was then referred to Fuller, who gave his assent thereto. It was entirely legitimate and commendable that Blackman should lend his efforts in the direction of realizing on the paper.

It was commendable that Fuller should want the assent of Blackman to whatever was done. The negotiations and assent on the part of Blackman, however, would avail nothing without the assent of Fuller. The surrender and extinguishment of the papers was the act of Fuller. It was none the less so because he availed himself of the negotiations of Blackman.

We think the decree of the district court was right in all respects, and it is accordingly *affirmed*.