.MARIA. REYELTS, Executrix, Appellant, v. CARL FEUCHT, Appellee.

NOVEMBER 20, 1928.

*Harvey H. Hindt* and *Klay & Klay*, for appellant.

*Thomas & Myers*, for appellee.

KINDIG, J.—On or about March 15, 1918, one E. O. Car-

penter and others executed, made payable March 1, 1928, and delivered, to Claus W. Reyelts or order, a promissory note in the sum of $25,000, with interest at the rate of 5 per cent per annum before maturity and 8 per cent per annum thereafter. That negotiable instrument was secured by a real estate mortgage executed by John and Hendrika Zoet. For the sake of brevity, hereafter these papers will be referred to as the Zoet note and mortgage.

While thus the owner of those documents, Claus W. Reyelts, in June, 1921, was indebted to the Iowa Savings Bank, of Rock Rapids, apparently for the sum of $12,000, which was evidenced by promissory notes aggregating that amount. Therefore, to secure the same to the bank, Claus W. Reyelts executed an assignment of the Zoet mortgage, indorsed the $25,000 note, and delivered to the bank the assignment, together with the Zoet mortgage and note. There the matter rested until the 11th day of July, 1923, when Claus W. Reyelts assigned the Zoet note and mortgage to Claus H. Reyelts, the appellant's testate (Claus H. Reyelts afterwards died, and appellant was appointed executrix of his estate), for the purpose of securing an indebtedness of $2,600 which the former owed the latter. This transaction, however, was accomplished without the delivery of the Zoet note and mortgage to the assignee. During all the times hereinbefore mentioned, that note and mortgage were in the possession of the Iowa Savings Bank, at Rock Rapids, under the pledge arrangement before described. Both assignments, as well as the Zoet mortgage itself, were recorded.

The appellee, during the months of March, April, May, and June of the year 1924, was a depositor in the Iowa Savings Bank, and his certificates evidencing such funds there became due July 1, 1924. He called for his money on July 3d, but was told by the bank that it was not able to pay then, but if he would leave the same for 30 or 60 days longer, security would be given therefor. In compliance therewith, on July 5th the bank delivered to him, properly indorsed, the $12,000 worth of Claus W. Reyelts notes, together with the Zoet $25,000 note and mortgage, which were pledged to secure the same. After consulting with his banker and attorney, appellee found that the "security" given him by the bank lacked $4,000 of being enough to cover

his deposit of $16,000, because the Claus W. Reyelts notes held by the bank aggregated only $12,000. So, after negotiations between appellee, the bank, and one F. L. Sutter, an officer of said institution, there was obtained from Claus W. Reyelts another note for $4,000, on July 7th or 8th, payable to the said Sutter individually, together with a pledge agreement hypothecating the Zoet note to insure the payment thereof. Hence, the $4,000 note and the collateral agreement were in turn delivered by F. L. Sutter, as an accommodation, to the bank, properly indorsed, and transferred to appellee, in order to .complete his security. Upon the receipt thereof, appellee duly recorded the instrument. Thereafter, on July 9th, the bank became insolvent.

More than. a year passed by, and appellee did not receive payment · on his indebtedness, although in the meantime the same became due. Wherefore, on August 8, 1925, he commenced an action in the district court against Claus W. Reyelts (neither appellant nor her testate was a party), the bank, its receiver, and F. L. Sutter, to accomplish the sale of the said pledged Zoet note and mortgage for the payment of the $16,000 Claus W. Reyelts' notes then held by appellee through the transfer from the bank and Sutter. As a result of that suit, the Zoet note and mortgage were sold at execution to appellee on August 20, 1926, for $18,368.84. Such aggregate covered principal, accrued interest, and court costs. Consequently, the appellee was thereby paid in full, and he surrendered the Claus W. Reyelts notes, aggregating $16,000, marked "canceled and paid," and retained the Zoet note and mortgage.

Throughout all proceedings and incidents hereinabove set forth, appellee knew nothing whatever concerning the alleged assignment to appellant's testate for the protection of the $2,600 indebtedness previously explained. Nor does it appear that at any time did appellant or her testate notify Zoet concerning the pretended claim. Later, on the 26th day of March, 1927, appellant commenced this action to establish a lien on appellee's interest in the $18,368.84 received through the foreclosure sale of the Zoet note. It is to be especially observed that appellant did not seek to obtain any interest in the Zoet note, but, as part of her prayer before mentioned, she asked for judgment against appellee, to be established as a lien on the sale price aforesaid,

to the extent of $2,600, with interest at 8 per cent per annum from March 31, 1921.

Appellant contends: First, that, through the transaction with the bank, appellee obtained prior right to the Zoet note in the amount of $12,000, represented by the original Claus W. Reyelts notes; second, that at this point her interests begin, and she is entitled to the next $2,600 from the proceeds of the Zoet note; and third, that appellee should have the remainder thereof, to obtain payment for the last Claus W. Reyelts note of $4,000, received through the bank a few days before its doors were closed. Admission is made by appellant that the appellee was an innocent purchaser, so far as the first $12,000 of the Zoet note is concerned, but her theory is that he was not a holder in due course in relation to the last $4,000 above mentioned.

Basis for this position on the part of appellant is: First, that the bank, through the pledge from Claus W. Reyelts, received an interest in the Zoet note to the extent of the first $12,000 which was acquired before appellant's testate received his assignment, and therefore appellee's right thereto is paramount, because he obtained the same directly from the bank; and second, that, after the $12,000 transaction before suggested, appellant's testate obtained his interest through the assignment, and therefore, when appellee received the third assignment, to secure the last named $4,000 obligation, it was subject to appellant's equities. To put the thought in another way, appellant says that, even though, as to the $12,000 interest in the Zoet note, appellee was an innocent purchaser in good faith, yet he could not be as to the latter $4,000, because, at the time the last note was signed and the pledge agreement given to accompany it, the Zoet note was already in appellee's possession, and the $2,600 assignment to her testate was outstanding. Resultantly, F. L. Sutter never was a holder thereof, and therefore appellee, claiming through him, could not be, appellant asserts, a holder in due course.

Because of the view we take of this controversy, it is not necessary to decide the question as to whether or not, under the circumstances, appellee was at all times a holder in due course.

I. Whatever appellant's rights are, they do not amount to

 those of a pledgee. No delivery of the Zoet note was ever made to appellant or her testate. Neither at any time ever had possession thereof. 31 Cyc. 799 furnishes the following text:

"Under both the civil and common law, it is necessary to the validity of a pledge that possession of the pledged property be delivered to the pledgee, or to someone for him. Delivery of the thing is not a consequence, but the very essence of the contract.. Such possession must also continue with the pledgee or his agent."

21 Ruling Case Law 642, Section 10, suggests:

"It is undoubtedly true that a contract which is intended as a pledge of property is enforceable between the parties, though there has been no delivery of possession, provided there is a proper subject-matter, a debt or engagement, and a meeting of the minds of the parties that the subject-matter shall be handed over to secure the payment or fulfillment of the debt or engagement. But to consummate the contract, and constitute a valid pledge, there must be a delivery of the property pledged, either actual or constructive, to the pledgee, or a pledge holder, coupled with a continuous retention of such possession by him; and good faith does not avail the pledgee, in the absence of delivery and possession, either actual or constructive. Until the act of delivery is performed, the special property that the bailee is entitled to hold does not vest in him. * * * The requirement of possession is an inexorable rule of law, adopted to prevent fraud and deception; for, if the debtor remains in possession, the law presumes that those who deal with him do so on the faith of his being the unqualified owner of the goods. If, however, the pledgee has the thing already in his possession, the very contract transfers to him, by operation of law, a virtual possession thereof as a pledge, the moment the contract is completed."

See, also, *Bunker v. International Harvester Co.,* 148 Iowa 708; *Citizens' Bank of Greenfield v. Dows & Co.,* 68 Iowa 460.

II. Determination of appellant's interests in the premises must be made on the theory that appellee acquired his collateral security without any notice, either actual or constructive, con-

cerning the former's claim. Appellee had no actual notice thereof, nor was he bound by law to have the information because of the record made concerning the assignment to appellant's testate. That relates to the real estate and the mortgage lien thereon, rather than to the Zoet note as personalty. *Bunker v. International Harvester Co.*, supra, says:

"It is the first contention of the defendant [the Harvester Company] that Fuller failed to put upon record any assignment of the mortgage to him, and that the defendant purchased without notice, and that its claims are, therefore, paramount. This contention is wanting in merit. The paper was transferable by indorsement and delivery, and our recording statutes have no application to such a case, so far as subsequent purported purchasers of the paper are concerned. If the defendant had been a subsequent purchaser or incumbrancer of the land, and as such had innocently relied upon a release by the mortgagee, a different question would be presented."

Record was not made of this mortgage as a chattel security (we do not decide that such could have been done); but the index thereof has relation to real estate only, and the dispute here arises, not over the right concerning the priority of liens upon the real estate incumbered, but rather, it is confined to the equities in the Zoet note, as such.

III. But appellant urges that, even if she did not take as pledgee, and appellee had no notice of the assignment to her testate, nevertheless her claim is paramount and prior to the $4,000 Claus W. Reyelts note because it was first in time. Accordingly, she insists that, so far as appellee, Claus W. Reyelts, the assignor, and herself are concerned, the assignment first made must prevail, regardless of notice to Zoet.

Under some circumstances, this is true. *Ottumwa Boiler Works v. M. J. O'Meara & Son*, 206 Iowa 577: As to whether or not that principle has application to the facts in the case at bar we do not decide, because of the peculiar remedy adopted by appellant to obtain her demands. But see *Crosby v. Tanner*, 40 Iowa 136.

IV. Her effort here is to fix a lien upon the $18,368.84 obtained by appellee at the foreclosure sale of the Zoet note, and

in furtherance thereof she asked judgment accordingly for $2,600 and interest.

Special notice is here to be taken of the fact that appellant does not seek to establish a lien upon or obtain any proceeds from the collection of the Zoet note. If she had any equities under her assignment, they related to the Zoet note. When appellee instituted the foreclosure proceedings and sold the Zoet note, he did no more than was authorized by his collateral agreements. Just because he was a purchaser, the result is not changed. A conclusion here must be reached the same as if some other person had bought the Zoet note at that sale. Whoever was the purchaser at that time and place took the Zoet note, subject to all the liens and equities, if any, that could lawfully be asserted against such purchaser. Then, if appellant had such lien therein or right thereto as she now claims (a point which we do not determine), it remained the same after the sale as before, so far as the purposes of this discussion are concerned. Thus, in no event, under her pleadings here, would she be entitled to a lien upon the purchase price furnished at the foreclosure sale by appellee. Said sum was not the proceeds collected from the Zoet note, but rather, the consideration paid therefor by appellee to Claus W. Reyelts, the assignor, to obtain his title thereto.

These funds, it is true, were, in effect (even though not actually), paid into court by appellee, and by the clerk thereof returned to him. However, that was done because appellee had this sum coming to him from Claus W. Reyelts on the notes transferred by the bank, aggregating $16,000. Appellant's interests, if any (a subject which we do not adjudicate), did not attach thereto, but remained in the Zoet note. After the foreclosure sale, that note continued in full force and effect, so far as Zoet was concerned.

V. The only equity held by appellant was to have Zoet pay her the $2,600 and interest in the order of her assignment, assuming that she is entitled thereto. Apt language in *Bunker v. International Harvester Co.*, supra, is:

" * * * Everett Bunker is the owner of certain land * * *. On April 19, 1907, he executed a negotiable note for $1,300 to one Blackman, payable in five years, and secured by mortgage on his land. A few days later, Blackman transferred this note and mortgage to one Fuller by blank indorsement of the note,

by delivery of the note and mortgage. Fuller was, at that time, agent and attorney for certain creditors of Blackman, and as such held claims against him for collection, amounting to $911. * * * In June, 1907, Blackman executed a purported written assignment of such note and mortgage to the defendant; the same being then in the actual possession of Fuller, under the previous transfer. * * * It is contended, however, that defendant [the Harvester Company] acquired a lien on the mortgage by its assignment, and that its right could not be affected by any subsequent act of Blackman and Fuller and the mortgagor. In a legal sense, defendant acquired nothing by its assignment. Its contract, however, was one of which equity could take cognizance, and could extend to defendant equitable relief thereunder. * * * The most that equity could do in such a case would be to permit the defendant to take the balance of proceeds which would otherwise have gone to Blackman, in case Fuller had realized out of the paper more than sufficient to pay the claims in his hands.''

Possession of a properly indorsed document was at all times in either the bank or appellee, and appellant could not have recovered thereon in a suit against Zoet, under the facts and circumstances here presented, without the temporary or permanent custody of the negotiable instrument. Furthermore, she could not have sold said note at judicial sale when, under this record, her ability to deliver possession thereof was lacking. Her only rights therein, if any, were to receive payment from Zoet according to the priorities of the parties, and to enforce this, a court of equity will lend its aid.

Manifestly, unless appellee converted the Zoet note, appellant's redress must be in the pursuance of her claim to an equitable interest therein, consistently with the suggestion made in the *International Harvester Co.* case, supra.

VI. Clearly, appellee did not wrongfully convert the Zoet note by the foreclosure proceedings. He at the time knew nothing about appellant's claim. This being true, he became the owner of the Zoet paper rightfully and in good faith (subject to any rights appellant may have had), and before that holding could become otherwise, it was necessary for appellant to make a demand consistent with her asserted interest in the Zoet note. *Lee v. Coon Rapids Nat. Bank,* 166 Iowa 242; *Gibson v. Mc-*

*Intire,* 110 Iowa 417. See, also, *Hall v. Merchants State Bank,* 199 Iowa 483.

According to the record, however, she did not do this at any time. Apparently, appellant without cause abandoned the Zoet note and sought said sale price fund to which she was not entitled. Whether or not appellee collected the Zoet note does not appear, and if he did so, it is not proven or suggested that the same was done otherwise than in harmony with appellant's claim.

Conversion of the Zoet note on the part of appellee is not shown to have been made, and no other basis (assuming, without deciding, that a lien would thus arise) is laid for the specific relief prayed.

VII. Had appellant or her testate served due notice upon Zoet before he paid the note, and should she then seek to recover from him under a claim prior to that of appellee, a different question would have been presented. At this late date, however, we do not find in the record any basis authorizing us to extend such broad, equitable relief. Payment of the Zoet note may or may not have been made. As to this the record is silent.

Zoet is not a party to this action, and we have no right to enter any judgment here that would prejudice him, because he, so far as the record discloses, had no notice whatsoever concerning the assignment of the $25,000 note to appellant. He cannot be compelled to pay twice, or in any way detrimental to him, under these circumstances.

The judgment and decree of the district court consequently should be, and hereby is, affirmed.—*Affirmed.*

STEVENS, C. J., and EVANS, FAVILLE, and WAGNER, JJ., concur.