CARL F. MARTENS, Appellee, v. GEORGE H. MARTENS et al., Appellees; F. L. GATES, Appellant.

No. 46373.

DECEMBER 14, 1943.

REHEARING DENIED FEBRUARY 11, 1944.

Lappen & Carlson, of Des Moines, for appellant.

Leland Forrest, of Des Moines, and Lee R. Watts, of Corning, for Carl F. Martens, appellee.

Lappen & Carlson, of Des Moines, for all other appellees.

MANTZ, J.—This is an action in equity asking that certain property in Warren County, Iowa, belonging to the estate of John F. Martens, be partitioned. The issues and facts will be set forth in the opinion. Carl F. Martens is plaintiff and George H. Martens, J. H. Martens, John A. Martens, Matilda Gates, and F. L. Gates are the defendants. They resisted the claim of the plaintiff. The court found in favor of the plaintiff, ordering partition and sale of the property and distribution of the proceeds. The defendant F. L. Gates has appealed.

Carl F. Martens, appellee, claims to be the owner and tenant in common of an undivided one-fifth share or interest in and to the real estate described in the petition and he asks that same be partitioned. F. L. Gates, appellant, claims to be the owner of all of the real estate described in said petition; that he secured title thereto by reason of a conveyance from other interested parties who were heirs at law of John F. Martens and by having redeemed from appellee Carl F. Martens on an execution sale made on a claim of said appellee.

We will attempt to detail some of the facts and proceedings leading up to the final decree. The proceedings were rather long-drawn-out and involved the settlement of the estate of John F. Martens, a certain claim filed therein, and certain mortgages which were alleged to have been liens upon the real estate, the validity and effect of an execution sale, and other matters pertaining thereto.

John F. Martens died testate on July 17, 1938. The lands sought to be partitioned belonged to his estate. Some years prior to his death he had given a trust deed to such lands to certain of his children, which trust deed was to terminate at his death. This trust deed was evidently given for the purpose of protecting said John F. Martens in certain financial matters and the trustees never held more than a mere naked legal title. The beneficial interest was at all times in John F. Martens.

At the time of his death, and for some years prior thereto, the property involved had two mortgages thereon, one known as

the ''Blair'' mortgage for $2,500 and the other an $18,500 mortgage to the Union Central Life Insurance Company of Cincinnati, Ohio. Under his will the real estate became the property of certain of his children, share and share alike. E. J. Martens was named as beneficiary under the will, along with the defendants above named (except F. L. Gates), but due to the fact that his share was more than taken up by advancements made to him by his father, he received no interest in the real estate. Later, by quitclaim deed he conveyed his interest to four of his brothers and a sister.

On December 9, 1942, all of the owners of the real estate, except Carl F. Martens, executed to F. L. Gates, appellant, a quitclaim deed conveying all of their right, title, and interest in and to the real estate in question. The consideration therein expressed was one dollar. The grantors in such deed and F. L. Gates are defendants in the partition action. All of them deny the title of appellee Carl F. Martens, and ask the court to decree that no such title existed in such appellee; that the two mortgages above named be held void and no lien upon the land and that the entire title be decreed to be in F. L. Gates; and they ask for further equitable relief.

The record shows that in May 1937, John F. Martens made and delivered to Carl F. Martens, George H. Martens, and John A. Martens the trust deed above referred to. All of the parties to this action were cognizant of such conveyance and we do not think that it is particularly material in the consideration of the matters involved in this controversy. At any rate, none of the grantees of said trust deed ever made any claim to having any beneficial interest thereunder. Consequently, the property described in the trust deed went as provided by the will of John F. Martens.

As stated before, John F. Martens died on July 17, 1938. On August 16, 1938, his will was admitted to probate and Carl F. Martens, a son, and appellee herein, was appointed executor. On February 11, 1939, Carl F. Martens personally filed a claim for a $3,000 note given him by his father under date of September 22, 1922, with six per cent interest from March 4, 1939. On November 22, 1939, all of the devisees and beneficiaries and

heirs at law of the estate executed what was designated as "Consent to Establishment of Claim as a Lien on Real Estate," reciting that the signers thereof were the sole heirs at law of John F. Martens; that Carl F. Martens had a claim of the fourth class which had been filed therein and allowed and established as a claim against the estate, said claim being in the sum of $3,000 with six per cent interest from March 4, 1939; that there was no personal property in the estate with which to pay any part of such claim, and further that the claimant, Carl F. Martens, was willing to allow said estate to be closed and not to force a sale of the real estate if said claim was established against the real estate listed as shown in the inventory as belonging to John F. Martens at the time of his decease, *subject to the mortgage encumbrances now on said premises.*

The concluding paragraph of said consent of claim as a lien on such real estate is as follows:

"Now, Therefore, we, the undersigned, for the purpose of permitting said estate to be closed and for the purpose of avoiding a sale of the real estate at this time, do hereby enter our consent that this Court may authorize the closing of said estate and in said order establish the claim of said Carl F. Martens as a lien upon all of the real estate of which said John F. Martens died seized, a description of which is set out in the inventory filed herein. Dated this 1st day of November A. D., 1939."

On March 20, 1940, Judge W. S. Cooper by order approved the final report and ordered the closing of the estate. In the final report there was some reference to the trust deed from John F. Martens to his three sons, Carl, George, and John, as trustees, as follows:

"* * * the Trustees under said Deed have, however, treated said real estate as a part of the assets of the estate of John F. Martens, deceased, and that your Executor has accordingly listed said real estate in the inventory filed herein; that said real estate is heavily encumbered and if offered at a forced sale would probably not bring the amount of the encumbrances against it."

On October 16, 1941, Carl F. Martens, executor and claimant, made an application to sell the real estate belonging to the estate

and to pay his claim, reciting the closing of the estate, the payment of all claims except the $3,000 one allowed and established against said estate and the real estate belonging thereto, subject to existing liens of record. Said claimant further recited that there was no personal property with which to pay such claim and that it was necessary to resort to the real estate for that purpose. We quote one paragraph of said application:

"That all of said real estate is encumbered and it will be to the best interests of said estate to sell said real estate subject to all encumbrances of record."

Following a hearing, in which resistance was filed to said application, at which hearing claimant appeared by counsel, Lee R. Watts, and the other defendants appeared by their attorneys, Lappen & Carlson, the court, Judge E. W. Dingwell, ruled therein by findings of fact on April 21, 1942, and by decree on May 11, 1942 (as of April 21, 1942).

Both findings and decree refer to the estate of John F. Martens, the $3,000 claim as a lien on the real estate of deceased "subject to the existing liens of record," and the closing of the estate and the nonpayment of said claim. The findings further refer to "Resistance to said Application" filed by other heirs. In the decree of the court, in referring to the real estate, we find the following:

"* * * the court further finds that said real estate is subject to two mortgages, one of which is recorded in Book 93 of mortgages Page 226 and the other is recorded in Book 95 of mortgages Page 339 in the office of the Recorder of Warren County, Iowa, which mortgages are a valid lien against said real estate prior to the lien of said claim of claimant; the court further finds that said real estate should be sold subject to said mortgages and subject to all other prior liens of record."

Said decree quiets title to said real estate in the estate of John F. Martens, deceased. It was further ordered that the resistance and application of the defendants be dismissed and that the property should be sold to satisfy the claim of Carl F. Martens. It was ordered that a special execution issue to the sheriff of Warren County, Iowa, for the sale of the premises,

subject to prior liens of record, and judgment was entered in rem against said premises for the sum of $3,000 with six per cent interest from March 1, 1942, and costs. We quote further from the decree:

"It is further ordered, adjudged and decreed by the court that from and after the date of said sale all right, title and interest of each and all of the parties to this action in and to said real estate, shall be barred and forever foreclosed except a right of redemption as provided by law, and that, unless a redemption is made within one year from the date of said sale, a sheriff's deed shall issue to the then holder of the certificate of said sale conveying the absolute fee title to said real estate subject to prior liens of record."

On May 13, 1942, a special execution was issued on this judgment, and following notice the property involved herein was sold thereunder by the sheriff to Carl F. Martens, sole bidder, for the amount of $3,104.95, of which $3,052.50 was used to satisfy the judgment and the balance the costs. On December 9, 1942, certain heirs of John F. Martens, having redemption rights in the property sold, assigned and transferred to F. L. Gates their equity of redemption in and to the real estate involved, and authorized said F. L. Gates to take title in and to the property described, with full right and lawful authority to do so.

On April 15, 1943, at the conclusion of the hearing in partition, the court found that Carl F. Martens was the holder of the certificate of purchase and was the owner of a one-fifth interest in and to the real estate involved, and that appellant, F. L. Gates, was the owner of an undivided four-fifths interest thereof and that the appellees J. R. Martens, John A. Martens, George H. Martens, and Matilda Gates had no interest in the property; also that Carl F. Martens was the holder of two valid mortgages against the real estate, the first having due thereon the sum of $2,200 with five per cent interest from March 1, 1942, and the other, $6,335.55 with five per cent interest from March 1, 1942, a total of $8,535.55 with five per cent interest from March 1, 1942.

The record showed that the said F. L. Gates had paid to the clerk of the district court a certain sum of money for the pur-

pose of redeeming from the execution sale above described, and that the sum paid therein by the said F. L. Gates was $3,193.75. The court found that at the time the said F. L. Gates made such redemption he and the said Carl F. Martens were tenants in common of the property and that the said attempted redemption would be for the benefit of all of such tenants in common, and that inasmuch as F. L. Gates owned four fifths of the property and Carl F. Martens one fifth, the said F. L. Gates was entitled to be reimbursed by the said Carl F. Martens in the amount of $638.75, or one fifth of the amount paid by said Gates.

The court further found that the two mortgages on said premises at the time of the execution sale were then valid and enforceable against the property; that both of them were held by Carl F. Martens, as assignee, and that they had been purchased at a substantial discount, but that Carl F. Martens, assignee, was only asking reimbursement for the amount which he had actually expended with five per cent interest. The court held, in effect, that in purchasing said mortgages Carl F. Martens acted to protect the estate property and with no intent or purpose to profit thereby.

The order for partition provided that the property be sold and that out of the proceeds there should be first paid the costs and necessary expenses, after which there should be paid by the referee to Carl F. Martens the sum of $8,535.55 with five per cent interest from March 1, 1942, and the balance was to be divided by paying one fifth to Carl F. Martens and four fifths to F. L. Gates, provided that from the share of Carl F. Martens there should be paid to F. L. Gates the sum of $638.75. A referee was appointed to make sale of the land and to carry out the directions of the decree.

The real questions to be passed upon are not numerous, yet appellant in argument has covered a wide field. We believe that some of the matters argued by appellant have little bearing upon the real matters in dispute. Some seem to be based upon speculation and conjecture, and parts seem to ignore unquestioned facts of record. The manner in which appellant has presented the various questions which he claims are involved has not in all respects had a tendency to clarify the issues. He questions some

of the estate proceedings in which his grantors took an active part and made no objections. In argument he assails the decree of Judge Dingwell, which ordered the sale of the estate property to pay the claim of Carl F. Martens and in which the court held that said claim was subject to the lien of the two mortgages. No appeal was taken from such decree. Appellant argues that the finding in that decree with respect to the mortgage liens was dictum; also that the sale under execution on such claim had the effect of wiping out the entire interest of Carl F. Martens in and to the tract of land then sold. He further argues that it was the duty of the bidder at the execution sale to have bid the full market value of the land sold, and also that appellee Carl F. Martens in making the bid for the amount of his claim, interest, and costs did so with the purpose of defeating and defrauding his brothers and sister. We are unable to agree with appellant in regard to such claims.

The matter started in probate but was later transferred to equity and it was in that forum final disposition was made.

As above stated, the decree of Judge Dingwell was not appealed from. The findings of fact and the judgment thereon are binding herein. Appellee Carl F. Martens and the grantors of appellant were parties to that proceeding; they are in no position to question its holding.

Carl F. Martens and his brothers and sister obtained their rights in and to the property sold in the first instance through the will of their father. Under its terms they became tenants in common. When Judge Dingwell entered his decree and ordered the property sold to pay the claim of Carl F. Martens, the five children, to wit, Carl F. Martens, George H. Martens, J. R. Martens, John A. Martens, and Matilda Gates, each owned an undivided one-fifth share or interest therein. At that time all of the property belonged to the estate of John F. Martens, and the court so decreed; also that such property was liable to claimant for his lien and subject to the two mortgage liens.

Carl F. Martens had an established claim of $3,000 against the estate. All of the interested parties recognized this fact. There was insufficient personal property in the estate to pay the claim. Carl was not insisting that the real property be then sold to pay his claim. He, in common with the other heirs,

realized that such an action would result in a sacrifice to all; therefore, it was agreed by all that the claim should be established as a valid lien upon the property, subject to the two mortgages thereon at that time, and all of the grantors to F. L. Gates personally signed such agreement, and the record shows that counsel for appellant was at the time representing the grantors who signed the agreement for the establishment of Carl's claim.

As above stated, Judge Cooper affirmed the allowance of the claim and in so doing referred to and approved such application of allowance. It was two years later that Carl F. Martens petitioned the court to sell the land involved to pay his claim and in said application referred to the fact that his claim had been allowed subject to the liens of record.

Pursuant to order of the court, the execution was issued directed to the sheriff, who thereupon proceeded to make sale of the property. This execution did not have in it that part of the court's order that the property was to be sold "subject to prior liens of record." A sale was had thereunder on June 15, 1942, and the property was bought by the claimant, Carl F. Martens, for the amount of his claim, interest, and costs.

Appellant seems to proceed upon the theory that as the property was sold to pay the claim of Carl F. Martens and Carl F. Martens bought the same at the execution sale, such proceeding was, in effect, an absolute sale of the share of Carl F. Martens. He refers to it as being a sale of five fifths and argues that it was absolute. Ordinarily, a sale of real estate belonging to an estate to pay estate debts becomes absolute without the right of redemption. However, in this case the court provided that such redemption right might be exercised by any interested party within a period of one year.

Appellant argues at considerable length that the sale as conducted had the effect of wiping out the two existing mortgage liens. We will discuss briefly some of the things connected with the sale. It was made by the sheriff of Warren County, Iowa. A deputy of that office conducted the sale. As a witness, he told of receiving the execution and making the levy, and was then asked by present counsel (Carlson) for appellant the following questions:

"Q. Do you remember at the time of the sale whether you did or did not sell the property subject to the liens of record? A. I started to, subject to mortgage I believe was the statement I made. And I remember it clearly because you got onto me about it and stopped me. So I went back and sold it as described in the special execution. Q. Without any qualifications? A. That is right. Q. You say I was representing the Martens? A. You were. Q. I asked you by what authority you sold it and you said you did not have any? A. Yes, and you were a little hard about it. I know I was a little mad at the time. I sold it as described in the execution. Q. And not subject to the mortgages? A. That is correct. Q. And you so announced it? A. Yes, sir. Q. Then you got your bid? A. I did. Q. For Mr. Carl Martens and it was expressed by Mr. Watts? A. That is correct."

In cross-examination of the same witness, the following ensued:

"Q. You announced it as being sold subject to the mortgage didn't you, and didn't Mr. Carlson say there wasn't anything in the execution about it, and you said, 'I guess that is right'? A. Yes, then I went ahead."

Carl F. Martens, claimant, also testified concerning the incidents of that sale, and to the effect that the officer selling stated that he was selling subject to the liens of record.

It seems to be the theory of appellant that inasmuch as the execution contained no recital that the property levied upon was being sold subject to prior existing liens, the hushing up of that fact by the officer making the sale would amount to a sale free and clear of such liens. We do not think it would have that effect and we find ample authority in Iowa to the contrary. In the early case of Hamsmith v. Espy, 19 Iowa 444, 446, Dillon, J., one of Iowa's greatest jurists, said:

"In making a sale under execution, the sheriff or other public officer professes to sell only the interest or estate of the judgment debtor. He gives no warranty. The law proclaims in the ears of all who propose to buy—caveat emptor, and look out, take notice, beware of the title for which you bid."

The doctrine therein set forth has not been deviated from in Iowa since its holding. Jones v. Blumenstein, 77 Iowa 361, 42 N. W. 321; Home Savings Bank v. Klise, 205 Iowa 1103, 216 N. W. 109. It has long been the holding of our courts that at an execution sale the purchaser gets but the interest of the execution debtor. Pinckney v. Collie, 114 Iowa 441, 87 N. W. 406. In the case of Rippe v. Badger, 125 Iowa 725, 727, 101 N. W. 642, 106 Am. St. Rep. 336, the court used the following language:

"The maxim of caveat emptor unquestionably applies to a sale under execution, and the purchaser ordinarily acquires no better title than the debtor could have conveyed at the time the lien attached."

Let us look at the record. In effect, the debtor was John F. Martens. He incurred the $3,000 obligation and died without paying it. His estate, the very property involved, steps into his shoes at the execution sale. The judgment creditor (Carl F. Martens) in buying the property got but the interest therein of the execution debtor—that is, the land subject to the two mortgages. Any other person entitled to redeem could do so by paying the amount bid by Carl F. Martens, together with costs.

Here we have a situation where one tenant in common buys the entire tract in order to satisfy a claim for which the execution sale had been ordered.

The lower court held that at the execution sale on June 15, 1942, there passed to the execution creditor, Carl F. Martens, the property involved, subject to the liens thereon, and provided a right of redemption be given, naming all other interested parties, to protect their interests in the property. We hold that the lower court did not err in so deciding. We think that to hold otherwise, in the face of the record and proceedings therein, would have been the height of inequity. We find nothing to warrant the statement in argument that Carl F. Martens, in purchasing this property, or in taking an assignment of the mortgages, was playing fast and loose and was seeking to take an unholy advantage.

Appellant devotes considerable argument to his claim that the mortgages were no longer liens upon the real estate, that

both had expired at the time of the decree of Judge Dingwell. The lower court found otherwise. The appellant again argues that such holding was dictum. In examining the question raised, let us look at the record. The "Blair" note and mortgage for $2,500 was given by the decedent, John F. Martens, on February 24, 1927, and was due in five years, or February 24, 1932. The maker renewed the debt for a period of five years, making the same due March 1, 1937. The mortgage securing the note was recorded on February 25, 1927. The Union Central Life Insurance Company loan, in the amount of $18,500, was for a term of ten years from and after March 1, 1931, being due on March 1, 1941. The mortgage securing this note was recorded February 24, 1931. There is nothing of record shown nor any claim made that these notes have been paid or that the mortgages securing them have been released.

The record shows that on January 20, 1938, the mortgage securing the Blair note was assigned to Carl F. Martens and that he paid for such assignment $2,200. On June 21, 1939, the holder of the Union Central Life Insurance Company mortgage assigned the same to Carl F. Martens in payment of the sum of $6,335.55. It will be seen that the Union Central Life Insurance Company mortgage was purchased at a discount of over $10,000. It will also appear that by purchasing both of these mortgages at a discount there was a saving of close to $11,000 effected. Carl F. Martens evidently was in a position to save the property from foreclosure and sale under past-due mortgages and there is nothing in the record to indicate that he had any other purpose or motive in mind. By taking the assignments at discounts he greatly enhanced the value of the property, and four fifths of this gain went to his brothers and sister, or their grantee (appellant), and the other went to him (appellee) as owner of the one-fifth interest. When Carl F. Martens took the assignments he was simply a tenant in common and any advantages arising from his actions would inure to the benefit of all other cotenants. The fact is that the appellant is the purchaser, or grantee, of the land from the other cotenants and the certificate of redemption does not give him any higher rights than were then possessed by them. Appellee Carl F. Martens having paid obligations which were valid liens on the whole tenancy would have a right to look

to the other cotenants for a contribution. It has long been a principle of law that among cotenants the right of contribution exists. See Rippe v. Badger, supra. Cotenants are liable for their proportionate share of the purchase price of a common property and for liens and encumbrances against the same. Davis v. Davis, 185 Iowa 179, 169 N. W. 129; Van Veen v. Van Veen, 213 Iowa 323, 236 N. W. 1, 238 N. W. 718; Arends v. Frerichs, 192 Iowa 285, 184 N. W. 650. See, also, Peirce v. Weare, 41 Iowa 378, and cases there cited. The order of the court requiring that out of the proceeds of the sale the sum of $8,535.55 and interest be paid to Carl F. Martens was, in effect, ordering contribution by the other cotenants. We think that such order was right and proper.

We do not think it necessary to pass upon the various other matters advanced by the parties to this suit. We deem the above as controlling. The court confirmed the liens, ordered sale and a distribution of the proceeds thereof. However, we have considered said matters. Some of them seem to rest upon a misapprehension of appellant upon the real questions involved. The issues were passed upon by a court of equity and we feel that the decision reached resulted from an application of the most wholesome rules of that forum. For the court to reach the result sought by appellant would, in our opinion, have resulted in a manifest injustice.

We must not lose sight of the fact that appellant is a grantee from those who were parties in the proceedings before Judge Dingwell. His rights as grantee are no higher than they had as grantors. While such grantors have not appealed, we think that there is permissible an inference that the interests of appellant herein are tied in with theirs. Laying aside and disregarding the technicalities sought to be applied, looking past the form and seeing the substance, we are lead to this inquiry, What would be the result in this case were we to sustain the contentions which appellant is making herein? If we did, appellant would secure title to about 271 acres of Iowa land at a cost of a little over $3,000—that is, by paying the claim which Carl F. Martens had against the estate of his father. Carl F. Martens would stand to lose not only his one-fifth interest in the land but

also the sum of $8,535.55 which he put up to satisfy the mortgage debts of close to $20,000 and thereby prevent a foreclosure. This would seem to be a rather strange reward to him for his forbearance to press his claim in a time of financial stringency and for his saving the estate over $10,000 in buying up the delinquent mortgages and at a time when the other interested parties were unable or unwilling to do so. To characterize such acts as playing fast and loose is not justified. Right, justice, and fair dealing should not permit or countenance any such result. We think that the trial court was right in the decree entered and the same is affirmed.—Affirmed.

All JUSTICES concur.