C. E. GLANCY, appellant, v. CLYDE E. RAGSDALE et al., appellees; CALVERT FIRE INSURANCE COMPANY, appellant; BESSIE M. LUNNON et al., appellees.

No. 49938.

(Reported in 102 N.W.2d 890)

MAY 3, 1960.

Alex M. Miller and Joseph B. Joyce, both of Des Moines, for appellants.

George H. Cook, of Des Moines, for appellee C. W. Harvey.

THOMPSON, J.—The substantial controversy here is between the Calvert Fire Insurance Company, the major appellant, and the appellee C. W. Harvey. The plaintiff Glancy was on October 26, 1956, the owner of a Buick automobile which was damaged in a collision with another vehicle owned by defendant Kerr-McGee Oil Industries, Inc., and driven by defendant Ragsdale. The Calvert Fire Insurance Company, which we shall hereinafter refer to as Calvert, carried collision insurance on plaintiff's car, with a $50 deductible clause. The damage to the car being shown to be $890.89, Calvert promptly and on October 30, 1956, paid this amount to Glancy, less the $50 deductible, taking as evidence of the payment a written instrument called a "loan receipt." Copy of this was attached to Calvert's pleading in this case.

On February 1, 1957, suit was commenced in the Polk District Court by Glancy against Ragsdale and Kerr-McGee Oil Industries, Inc. These defendants will be hereinafter referred to as Kerr-McGee. On February 7, 1957, the bailiff of the Des Moines Municipal Court levied on Glancy's cause of action against Kerr-McGee, by virtue of an execution issued upon a judgment held by Bessie M. Lunnon. On March 4, 1957, sale was had under this levy and the cause of action purchased by

Bessie M. Lunnon for $25, and on March 8 next the bailiff issued his bill of sale to the purchaser. Whatever rights Bessie M. Lunnon acquired by this levy and sale have since been assigned to her then attorney, C. W. Harvey.

After the levy and sale the matter lay dormant, so far as the record shows, until April 24, 1959, when the original case, Glancy v. Kerr-McGee, came on for trial upon plaintiff's petition and Kerr-McGee's counterclaim. The trial resulted in a judgment for Glancy for the amount of the damage to his car, $890.89 and costs. The matter was at all times through the trial handled by attorneys for Calvert. Neither Bessie M. Lunnon nor her assignee Harvey attempted to assert any rights under their purported purchase of the cause of action until it had been fully tried and the fruits obtained. The judgment against Kerr-McGee was paid to the clerk of the district court, and the substantial controversy here is between Calvert and Harvey over which is entitled to receive payment from the clerk.

On May 7, 1959, the judgment then held in Glancy's name against Kerr-McGee was levied upon under an execution on a judgment against Glancy held by American Granite Corporation. On May 19 next, Harvey filed his motion to release this levy, and it has been released.

On May 25, 1959, Calvert and Glancy filed their motion to release the levy and void the bill of sale issued to Bessie M. Lunnon and held by Harvey as assignee. The principal reliance in this motion, and the only one we find it necessary to discuss, is contained in the allegation that under the loan receipt, Exhibit A attached, all the interest of Glancy except $50 was pledged and assigned to Calvert and was its property. To this Harvey filed a resistance, which is fairly summed up as denying Calvert's claim on these grounds: 1, Calvert was not a party to the original action, had not intervened, and so had no standing to obtain any relief through the procedure adopted; 2, Exhibit A is not a conveyance or assignment, but is merely a pledge which has not been foreclosed, and Calvert Fire Insurance Company therein named as pledgee was not a party to the action; 3, if Calvert advanced costs and controlled the suit against Kerr-McGee, it did so only as agent for Glancy and acquired

no rights thereby; 4, Calvert was guilty of laches by not intervening after the levy and before sale, and by taking no action to assert its rights for more than two years after the levy and sale; 5, since Iowa Rules of Civil Procedure require that all actions be brought in the name of the real party in interest, Calvert waived any rights it might have had by procuring and permitting the action to be brought and prosecuted in Glancy's name; and 6, the loan receipt, Exhibit A, is no more at best than a pledge or mortgage and was not acknowledged or filed for record, it gave no notice to a levying creditor of Calvert's rights and was void as against such creditor under our recording acts.

The questions raised by the motion to set aside levy and sale and the resistance thereto were apparently determined by the trial court as questions of law. No evidence appears to have been taken. The court denied the motion to set aside levy and sale and ordered the proceeds of the judgment against Kerr-McGee in the sum of $890.89 paid over to Harvey. It was apparently of the opinion that there was in some manner evidence of bad faith or fraud on the part of Glancy and Calvert in bringing the action in Glancy's name; that the loan receipt was not sufficient to convey any interest to Calvert because the description of the property damaged was not filled in; and that in the absence of any showing that Harvey or his assignor had knowledge of Calvert's interest in the claim against Kerr-McGee prior to the levy and sale such interest could not be asserted against them. It will be observed that the court agreed with Harvey in its first and third grounds given for its judgment, and that its second ground is based on something not asserted or pleaded by the resister, but which rather seems to have been conceded by him.

I. We can deal shortly with the resister's contention that Calvert had no standing to assert its rights by motion, because it had not intervened in the original action. We do not understand Harvey to claim the proceeding by motion to set aside the levy is improper in itself, but only that it is not available to Calvert. Harvey had himself used the procedure by motion in setting aside the levy of the American Granite Cor-

poration. We fail to see why the same procedure is not available to anyone having a real interest in the subject matter of the levy, whether or not he was a party to or had intervened in the original action. In Rursch v. Gee, 237 Iowa 1391, 1398, we said: "The subrogee may protect his rights by intervention * * * and in other ways, perhaps * * *." We see no reason why the procedure by motion to set aside levy may not be one of the "other ways." In fact, the point is ruled by sections 639.60 and 639.61, Code of 1958, discussed in Division VI below.

II. The trial court thought there was such a failure of description of the interest pledged or otherwise conveyed by the loan receipt that it amounted to nothing. The resister did not raise this question. He seemed to be fully advised as to what property had been damaged; his pleading in resistance to Calvert's motion alleged only that at best there was no more than a pledge of the claim against Kerr-McGee, which pledge had not been foreclosed.

Since the loan receipt is important at this point, we set it out:

| "Date Oct. 30, 1956 | Make and Model 1956 Buick Super | LOAN RECEIPT |
|---|---|---|
| "Amount $840.89 | Motor No. 19824435 Serial No. 5C405 4568 | |

"Received from the *Calvert Fire Ins. Co.* (hereinafter referred to as 'Company') the amount shown above as a loan, without interest, repayable only in the event and to the extent of any net recovery the undersigned may make from any person, persons, corporation or corporations, or other parties, causing or liable for the loss or damage to the property described below, or from any insurance effected on such property, and as security for such repayment the undersigned hereby pledges to the said 'Company' all his, its or their claim or claims against said person, persons, corporation or corporations or other parties, or from any insurance carrier or carriers, and any recovery thereon, and hereby delivers to said 'Company' all documents necessary to show his, its or their interest in said property.

"The undersigned covenants that no settlement has been made by the undersigned with any person, persons, corporation or corporations, or other parties against whom a claim may lie, and that no release has been given to anyone responsible for such loss, and that no such settlement will be made, nor release given without the written consent of the said company.

"The undersigned hereby agrees to promptly present claim and, if necessary, to commence, enter into and prosecute suit against such person or persons, corporation or corporations, or other parties, through whose negligence or other fault the aforesaid loss was caused, or who may otherwise be responsible therefor, with all due diligence, in his, its or their own name.

"In further consideration of said advance the undersigned hereby guarantee(s) that he, it or they are the owner(s) of said property and entitled to recover upon said claim for loss or damage thereto, and hereby appoint(s) the managers and/or agents of the said 'Company' and their successors severally, his, its or their agent(s) and attorney(s)-in-fact, with irrevocable power, to collect any such claim or claims, and to begin, prosecute, compromise or withdraw in his, its or their name, but at the expense of the said 'Company,' any and all legal proceedings that the said 'Company' may deem necessary to enforce such claim or claims, and to execute in the name of the undersigned, any documents that may be necessary to carry the same into effect for the purposes of this agreement.

"Any legal proceedings are to be under the exclusive direction and control of said 'Company.'

"The property hereinabove set forth is as follows:
Witness our hand the date above written.

Witness: s/ F. T. McAnany s/ C. E. Glancy (L.S.)

"

"By
Officer"

## "REQUEST To EMPLOY COUNSEL

"The undersigned, having suffered a property loss of $50.00 in excess of the $840.89 named in the foregoing loan receipt, does hereby request the said insurance company to employ counsel for and on my behalf, to effect recovery thereof, only, however, in the event that said insurance company employs counsel on its own behalf. It being herein agreed, that, in event of recovery the net proceeds thereof (after payment of costs and Attorneys' fees) shall be apportioned between the undersigned and the said insurance company as the interest of each herein appears.

"s/ C. E. Glancy

"Witness s/ F. T. McAnany."

The defect in the loan receipt, if it be a defect, is that it pledges the net recovery from any person causing damage to "the property described *below*" (Italics supplied); while in fact it is described above. But we think it not susceptible to dismissal as an entirely void instrument as the trial court did. We have pointed out that the property referred to was well understood by the resister; and indeed we think if it was sufficient as between the parties to the instrument, in the absence of fraud it could not be challenged by a third party. If there was a defect in the instrument, in the absence of fraud, only the parties to it could question it; and as between them, and certainly as against a third person, extrinsic evidence could be introduced to remedy any incompletion. Popofsky Co. v. Wearmouth, 216 Iowa 114, 119, 248 N.W. 358, 360, 361. This, of course, supposes that no rights under the recording acts are involved. Such is the situation here, as we endeavor to make clear in Division V following. It is true there was no evidence introduced in this case to show what property was meant, if it were in fact necessary to make a complete contract, that the

description actually "above" should have been inserted "below." But the motion to set aside levy and sale referred to the loan receipt as "pledging and assigning" all Glancy's interest in the claim against Ragsdale and Kerr-McGee; and the resister took issue only as to the exact nature of the pledge, not as to any deficiency in the description of the damaged property itself. We think the trial court was in error in holding that the loan receipt conveyed no interest in the cause of action against Kerr-McGee. Since the case was decided upon the pleadings, the court should have followed the allegations and admissions therein.

 III. Both the trial court and resister Harvey apparently believed that Calvert was in some manner guilty of a species of fraud in taking the loan receipt from Glancy and in bringing the action in his name. The court referred to the instrument as a "humbug" and, apparently with disapproval, pointed out the fact that after taking the loan receipt Calvert permitted Glancy to represent himself to the court as the real party in interest. We think the able court acted under a misapprehension of the true nature of the loan receipt and of the rights of the parties thereunder. Loan receipts are a common device in modern times in the adjustment of claims where third parties are concerned, and have never been thought by the courts to be tainted with fraud. As Justice Brandeis, speaking for the court, said in Luckenbach v. W. J. McCahan Sugar Refining Co., 248 U. S. 139, 149, 39 S. Ct. 53, 55, 63 L. Ed. 170, 1 A. L. R. 1522: "It is creditable to the ingenuity of businessmen that an arrangement should have been devised which is consonant both with the needs of commerce and the demands of justice." The same question was considered in Blair v. Espeland, 231 Minn. 444, 43 N.W.2d 274, and the right of the insurer and insured to enter into such an agreement, without implication of any underhand dealing, was upheld.

 IV. Nor can the right of the insurer to bring the suit in the name of the insured, under the circumstances prevailing here, be questioned. The loan receipt shows on its face that Glancy retained a fifty-dollar interest in any recovery against the alleged tort-feasor. Under similar circumstances we have held that the insured is the real party in interest. Caligiuri v.

Des Moines Railway Co., 227 Iowa 466, 468, 288 N.W. 702, 703; Rursch v. Gee, 237 Iowa 1391, 1398, 25 N.W.2d 312, 315. It was the right of the insurer, even without the loan receipt, to have the action brought in the name of the insured. It is true the collision-insurance policy is not in evidence; but Calvert's right of subrogation is not dependent upon contract. We said in Rursch v. Gee, supra, page 1397 of 237 Iowa, page 315 of 25 N.W.2d: "The collision carrier became subrogated by operation of law when it made the payment. And this would be true whether the collision-insurance policy expressly provided for subrogation or not." This is but a statement of generally established law.

Luckenbach v. W. J. McCahan Sugar Refining Co., supra, holds that a loan receipt is merely a device used for putting the insured in funds and preserving the insurer's right of subrogation against the third party causing the damage. It is there said, page 148 of 248 U. S., page 55 of 39 S. Ct.:

"Agreements of this nature have been a common practice in business for many years. [Citing authorities] It is clear that if valid and enforced according to their terms, they accomplish the desired purpose. They supply the shipper promptly with money to the full extent of the indemnity or compensation to which he is entitled on account of the loss; and they preserve to the insurers the claim against the carrier to which by the general law of insurance, independently of special agreement, they would become subrogated upon payment by them of the loss."

But whether we consider the loan receipt here as a means of preserving Calvert's right of subrogation or an assignment of the proceeds of the recovery against Kerr-McGee, or a pledge of sufficient of such proceeds to reimburse it for the moneys advanced, it is clear Calvert had an interest in and an equitable lien upon them. The appellee Harvey cites Reyelts v. Feucht, 206 Iowa 1326, 221 N.W. 937, as authority for the proposition that a pledge is not valid unless the property pledged is delivered to the pledgee and retained in his possession. Without further examining the validity of this rule as applied to the facts in the case at bar, it is sufficient to say that the cause of

action was in effect made over to Calvert by the loan receipt. It was given full right to pursue the claim against Kerr-McGee and to control the litigation in all respects and to collect any sums received. The delivery was as effective as it was possible to make it.

V. We come next to the question of the rights, if any, that Harvey's assignor Lunnon acquired by virtue of the levy and execution sale of the cause of action. The trial court thought that the lack of any notice of Calvert's interest to the purchaser at the sale was controlling. Again we are compelled to disagree. A long line of authorities holds that in judicial sales under execution the purchaser takes only whatever rights the judgment debtor has in the property bought. The rule of caveat emptor applies in full force. Before discussing the authorities so holding, however, it is appropriate to notice the contention made by Harvey in his resistance to the Calvert's motion to set aside the levy and sale, that he, or his assignor, was a levying or attaching creditor, that the loan receipt was a chattel mortgage within the meaning of section 556.3, Code of 1958, and that it was ineffective as against such assignor because it was not recorded. This point is not argued by Harvey here; in effect he has abandoned it by the statement at the opening of Division IV of his brief that "The appellee makes no effort to dispute the principle of caveat emptor and will not attempt to refute or deny the holding of any of the cases cited by appellants in this section of its brief."

However, since the trial court gave as one of the grounds for its ruling that there was no evidence that either Harvey or his assignor Lunnon had any knowledge of any alleged claim of Calvert "before the sale of the cause of action" to Lunnon, it must be noted that section 556.3 does not apply here. We so held in Howe & Co. v. Jones, 57 Iowa 130, 138, 8 N.W. 451, 455, 10 N.W. 299. We there laid down the rule that the recording act, section 556.3, supra, then section 1923 of the Code of 1873, is not applicable to choses in action. We said: "This property was in action and is called a chose in action because the holder has not its present possession." This case was cited with approval and followed in Friedmeyer v.

Lynch, 226 Iowa 251, 260, 284 N.W. 160, 165. It was also cited and discussed at some length in Aultman v. McConnell, 8 Cir., 34 F. 724. There a policy of insurance had been assigned. The court pointed out that the policy of insurance was not the real property, which was the right to claim payment from the insurer. It was held: "This right to payment was property, but it was in the nature of a chose in action, intangible, incapable of manual delivery or actual visible possession, and therefore not within the meaning of section 1923, Code of Iowa." 34 F. 724, 726. So here, what was conveyed by the loan receipt was the cause of action against Kerr-McGee. It was a chose in action. The recording acts do not apply.

In view of appellee Harvey's concession that the rule of caveat emptor is not disputed, we need not go at great length into the authorities which announce and follow it. We think the rule is well stated in 16 R. C. L., page 138: "A judicial sale carries only the interest, estate, and rights in the premises that the parties to the proceedings had and could have asserted, no more and no less. The purchaser succeeds to their rights and attitude in respect of the property sold, 'takes their shoes', stands in their place, acquires their interest as it existed in their hands, subject to all infirmities of title then attaching to the estate, *and to all equities, known or secret,* which operated as a limitation upon the nominal or apparent estate which they had." (Italics supplied.)

Numerous Iowa cases have discussed and followed the rule. See Downard v. Crenshaw, 49 Iowa 296; Holtzinger v. Edwards, 51 Iowa 383, 1 N.W. 600; Hale v. Marquette, 69 Iowa 376, 28 N.W. 647; Weaver v. Stacy, 93 Iowa 683, 62 N.W. 22; Matless v. Sundin, 94 Iowa 111, 62 N.W. 662; Martens v. Martens, 234 Iowa 519, 12 N.W.2d 201; Emmert v. Neiman, 245 Iowa 931, 65 N.W.2d 606; and Swanson v. Baldwin, 249 Iowa 19, 85 N.W.2d 576, 69 A. L. R.2d 249.

 VI. The appellee urges that Calvert should have protected its rights by giving notice of its interest after the levy and before the sale; that it should have intervened in the case; and that it should have applied for a stay of execution after levy and before sale. As to the failure to give notice and to

apply for a stay of execution, the answer is of course that the levy reached only such interest as Glancy had and Calvert had no right to stay the sale thereof. The question of proper procedure to assert its rights to the proceeds of the sale seems settled by sections 639.60 and 639.61, Code of 1958, supra. We quote section 639.60:

"Intervention—petition. Any person other than the defendant may, before the sale of any attached property, or before the payment to the plaintiff of the proceeds thereof, or any attached debt, present his petition verified by oath to the court, disputing the validity of the attachment, or stating a claim to the property or money, or to an interest in or lien on it, under any other attachment or otherwise, and setting forth the facts upon which the claim is founded."

Section 639.61 following says that the petitioner's claim shall be summarily investigated. It is true Calvert's pleading asserting its claim to the proceeds was labeled a "Motion"; but it was duly verified and we think was within the meaning of section 639.60.

VII. The court in fact proceeded to investigate Calvert's claim "in a summary manner" as section 639.61, supra, requires. It determined the matter upon the motion and resistance. Whether either party desired to introduce evidence or was given an opportunity to do so is not shown by the record; apparently both consented to the determination upon the pleadings; at least neither protested. The appellee now urges that the trial court having found the facts adversely to Calvert we are bound thereby. It is true the court is empowered by section 639.61, supra, to impanel a jury to determine the facts, which gives the appearance of a trial at law. But the point is not material. We think, as we have endeavored to demonstrate above, that the pleadings, with the admissions contained, raise points of law which require a finding for appellant Calvert. Harvey contends that the loan receipt was not offered or introduced in evidence; but his assignor's resistance in effect admits it. It does not ask that the movant be put upon proof, but confesses and avoids by contending that the receipt is not sufficient as a conveyance of any interest to Calvert. This raises

only a question of law as to the proper interpretation of the instrument. Allegations of fact in a pleading stand admitted unless denied. Rule of Civil Procedure 102. There were no material controverted issues of fact or of inferences to be drawn from admitted facts. The questions arising are entirely those of law, and we think the court was in error in finding for the appellee's assignor.

VIII. The appellee urges that the question of adequacy of the consideration paid by his assignor for the cause of action at the execution sale is not material. It appears that Bessie M. Lunnon paid $25 for Glancy's rights against Kerr-McGee. She did nothing by way of taking possession of her supposed claim, but sat by for some two years and finally permitted the case to be tried by attorneys for Calvert. The result was a recovery of the full amount of the damage to the Glancy automobile, $890.89, and court costs. This is the sum, now in the hands of the clerk of the court, to which Harvey claims to be entitled through his assignor's investment of $25. Since the point has become moot because of our holdings in other divisions of this opinion, we do not further consider it.

The levy and sale are affirmed so far as they apply to the interest of Glancy under the fifty-dollar-deductible clause as shown by the loan receipt. As to appellant Calvert, the judgment should be that it is entitled to the remaining sum of $840.89, and the clerk must be ordered to pay it over accordingly. The cause is reversed and remanded, with directions to so proceed. Costs will be taxed one fifth against C. E. Glancy and four fifths against C. W. Harvey.—Reversed and remanded, with directions.

All JUSTICES concur except BLISS and OLIVER, JJ., not sitting.