Charles C. SHIVVERS, Elnora Shivvers Dimm, Gerald J. Shivvers, Mark A. Shivvers, and Owen W. Shivvers, Appellants,

v.

Ernest MUELLER and Dorothy Mueller, Executors of the Estate of Ralph W. Shivvers, Appellees.

No. 68315.

Supreme Court of Iowa.

Nov. 23, 1983.

Rehearing Denied Dec. 21, 1983.

Timothy J. Finn of Curtis, Finn & Pattinson, Ames, for appellants.

Carroll Johnson of Johnson, Jordan & Lane, Knoxville, for appellees.

Considered by REYNOLDSON, C.J., and HARRIS, McCORMICK, SCHULTZ and CARTER, JJ.

HARRIS, Justice.

The question is whether a claim was presented too late to be considered as a part of probate proceedings. The trial court thought so and we agree. We accordingly vacate a contrary decision of the court of appeals.

Ralph Shivvers died testate in December 1977. The bulk of his will left his property to an only daughter and her children. The daughter and her husband are executors of the estate. Notice of probate was duly published and the period for filing claims expired July 3, 1978. *See* Iowa Code § 633.410.

Without first obtaining a court order authorizing them to do so, the executors, on November 3, 1978, made a substantial distribution of estate property to the beneficiaries. There were no unpaid claims on file. Federal and state taxes were fully paid. It seems that the distribution was made in the routine course of the administration, in good faith, and without knowledge of any unfiled claims.

One of the assets in the estate was a contract by which the decedent as vendor had sold certain real estate to one of his nephews. As a part of the distribution the executors executed, delivered, and recorded a written assignment of the contract, thus conveying the decedent's legal title to the beneficiaries.

On January 29, 1979, the vendee-nephew, together with his brothers and sisters, filed in the estate an instrument they called "Claim in Probate." We shall refer to this filing as a claim without expressly holding whether or not it was. They asserted that upon the death of their father, Charles Shivvers, in 1919, the decedent, their uncle Ralph, and Ralph's father (Oscar) fraudu-

lently concealed from Charles' widow the alleged fact that Charles had purchased from Oscar a part of the extensive Shivvers landholdings. According to the claimants, Ralph and Oscar fraudulently arranged for Charles' land to pass into Ralph's hands. Claimants say the two perpetuated their fraud through the years by various acts in order to keep Charles' widow and children ignorant of their ownership rights.

Plaintiffs asked for damages equal to a third of Ralph's gross estate. In support of this request the claimants allege Ralph's estate consisted largely of proceeds from the real estate sold to his nephew. Claimants assert they jointly would have owned a one-third interest in the real estate but for Ralph's fraud.

The executors gave notice of disallowance and moved to dismiss the so called claim based on untimeliness. The claimants did not assert a right to equitable relief from the time bar of section 633.410 on the ground of "peculiar circumstances." The trial court overruled the motion to dismiss on the ground the claim was not a claim within the meaning of section 633.410 "but rather is a claim of parties seeking to recover property from an estate which they assert belongs to them." The executors then answered, and claimants replied. In the answer the executor set up a defense based on the six month statutory time bar under section 633.410. In the reply the claimants again did not assert entitlement to relief because of peculiar circumstances but instead adopted the position of the trial court that their claim was not the kind covered by section 633.410.

The executors filed a motion for summary judgment setting up the defense that they had lawfully distributed the property after the time for filing of claims and hence were no longer in possession of the property in which the claimants claimed interest. In resisting, the claimants alleged the executors were "chargeable" because they controlled the property for purposes of administration and had not secured court authority for the distribution. They supported

their resistance with an affidavit alleging they did not discover the fraud until within six months of filing the claim, but still made no assertion of peculiar circumstances. The trial court sustained the motion for summary judgment, holding the "claim" was against property that was not in the hands of the executors, it having been lawfully distributed.

The claimants appealed, challenging the trial court ruling which sustained the motion for summary judgment. The executors cross-appealed the denial of their original dismissal motion.

The case was transferred to the court of appeals, which reversed the judgment of the trial court. The court of appeals held that the executors' distribution without a court order was made at their own peril, regardless of whether it was made in good faith. The court of appeals affirmed on the cross-appeal, holding that claimants would be entitled to relief if they could prove the allegations in their claim.

I. The specific issues stated by the executors in the application for further review address only the summary judgment challenge raised on the claimants' appeal. There is no mention of the court of appeals' decision on the cross-appeal. A preliminary question is whether we may review an issue relating to the cross-appeal when no party applied for further review of that part of the court of appeals' decision. Stated another way, is an issue to be set aside and lost if, during the appellate process, an application for further review is drawn too narrowly?

Iowa Rule of Appellate Procedure 402(b) prescribes the grounds for further review:

An application to the supreme court for further review shall allege precisely and in what manner the court of appeals: (1) Has erred; (2) has rendered a decision which is in conflict with a prior holding of a published court of appeals decision or published supreme court decision; (3) has not considered a potentially controlling constitutional provision in rendering its opinion, or (4) has decided a case which

should have been retained by the supreme court.

■ The question is not free from doubt. Claimants point to some of the many situations where errors can be waived by being ignored or overlooked. For example, matters objected to at trial are reviewed by this court only when properly cited and argued on appeal. *Rick v. Boegl,* 205 N.W.2d 713, 715 (Iowa 1973). Trial errors raised on appeal but not addressed in appellant's brief or oral argument are deemed waived. *Zeman v. Canton State Bank,* 211 N.W.2d 346, 350 (Iowa 1973).

■ On the other hand we believe the risk of waiver should be less during the appellate process than it is in defining issues for appeal. We think the proper rule is that developed by the United States Supreme Court in reviewing decisions of the federal courts of appeals.

The United States Supreme Court also limits its scope of review to properly preserved and presented questions. Nevertheless a supreme court rule allows a full review notwithstanding a failure of the briefs to address all issues properly raised below. The writ of certiorari brings the whole case before the supreme court and it may consider a question not presented in the certiorari petition. *See* U.S.Sup.Ct.R. 34.1(a); *Washington v. Davis,* 426 U.S. 229, 238, 96 S.Ct. 2040, 2046–47, 48 L.Ed.2d 597, 606 (1976).

We adopt the same rule. Our review of the court of appeals decision will not be limited here by reason of the language in the application for further review.

■ II. We assume, as the claimants contend, that their claim was not a 633.410 claim. For purposes of this appeal we take it as a claim against the personal representative for having had possession of property for purposes of administration, property the claimants allege decedent did not own and which was really theirs.

In rejecting the motion to dismiss, the trial court considered the "Claim in Probate" to be misnamed. The so-called claim was thought to be more in the nature of a

quiet title proceeding or an action to recover property. This view was based on *In re Estate of Conner,* 240 Iowa 479, 36 N.W.2d 833 (1948), which involved jointly-owned property, a bank certificate, payable to Zanette Conner or Ellis Conner, survivor. Zanette died and her executor held the certificate until his final report which recited it was Ellis' property. Beneficiaries objected that Ellis had failed to file a claim within the statutory period. We held:

> Ellis' failure to file claim within six months did not bar his rights under the non-claim statute. ... The reason is this is not a claim against the estate. Ellis merely seeks to recover property which he asserts belongs to him and was converted by the executor.

The *Conner* rule was followed in *Carlson v. Bankers Trust Co.,* 242 Iowa 1207, 1218, 50 N.W.2d 1, 8 (1951); *Herbst v. Treinen,* 249 Iowa 695, 701–02, 88 N.W.2d 820, 824 (1958). It is a well-established principle of law.

The *Conner* rule does not rescue these claimants. It merely limits the application of the time restraints of section 633.410 to claims against the estate. It does not, as claimants here would have it, hold that an independent right of recovery against fiduciaries arises merely because of their former possession of distributed property. These fiduciaries cannot be sued under the *Conner* theory because they no longer possess the property in question. They do not possess it because it was distributed. In the next division we take up the question of whether it was properly distributed.

■ III. It seems to be common practice in Iowa to make partial distributions of estate property prior to final settlement. This is often, but not always, done with court order. Plainly there is no statutory requirement for a court order before making such a voluntary distribution. A recognized authority explains:

> While generally the personal representative is not required to distribute the estate's property prior to termination, at some point during the administration he may determine that it would be safe to make some distribution or even safe to distribute the entire estate prior to his discharge. His determinations might properly be based upon the economic needs of the distributees or tax minimization possibilities for the estate and its distributees. While it may no doubt be the general practice to obtain an order of the court authorizing partial distributions prior to the final settlement proceeding, there is no statutory requirement necessitating this practice. There is also no reason under current law to obtain an order authorizing partial distribution unless other issues as to the appropriateness of a distribution to a particular person are also in question, or the personal representative contemplates a *non pro rata* distribution in hopes to protect himself from a later filed objection that other distributees were harmed thereby.
>
> ....
>
> Whenever the personal representative distributes property, he should obtain an appropriate receipt from the distributee and, if the inheritance tax liability of the distributee has not been provided for to the satisfaction of the personal representative, he should withhold an appropriate amount from the distribution to pay the tax attributable to the distributee.

S. Kurtz, Iowa Estates § 15.21 (1981).

■ Notwithstanding the silence of the Iowa probate code on the subject, the court of appeals unquestionably stated the common law rule: volunteer distributions, even those made in good faith, without court order are made at the representative's own peril. *See generally* 34 C.J.S. *Executors and Administrators* § 503 (1942); 31 Am. Jur.2d *Executors and Administrators* § 584 (1967).

■ There is some peril in making a partial distribution. As Kurtz points out, there is peril of additional tax liability. There is also peril of making a mistake in the distribution. But we think any peril to which these executors may have been exposed by their voluntary distribution did not include claimants' suit. Claimants'

lateness in filing is not in some way validated by this peril. Claimants were in no way affected by the absence of an *ex parte* order of partial distribution; they would have received no notice of such an order if it had been entered.

There was nothing irregular in the distribution. It was entirely legal and the trial court was right in holding plaintiffs' claims no longer had anything to do with the probate proceeding.

DECISION OF THE COURT OF APPEALS VACATED; DECISION OF THE TRIAL COURT AFFIRMED.