**In the Matter of the ESTATE of Virgie FOSTER, Deceased.**

**Gerald Foster and Charles F. Foster, Jr., Appellants.**

**No. 90–1714.**

Supreme Court of Iowa.

April 15, 1992.

Bob O. White and Allen A. Anderson of Spayde, White & Anderson, Oskaloosa, for appellants.

Garold F. Heslinga of Heslinga, Heslinga, Dixon & Grotewold, Oskaloosa, for appellee Ruth A. Foster.

Considered by McGIVERIN, C.J., and HARRIS, SCHULTZ, CARTER and SNELL, JJ.

CARTER, Justice.

Gerald Foster and Charles Foster, Jr., executors of the estate of Virgie Foster, deceased, appeal from an order requiring them to personally reimburse the estate for distributions made to beneficiaries without court approval. We reverse the challenged order and remand the matter for further proceedings.

The decedent died testate on April 8, 1989. Her will left all of her property to her four sons in equal shares. Two of these sons are the executors of her estate. The other sons are Gordon Foster and Larry Foster.

The decedent had liquid assets with a value of slightly more than $130,000 plus approximately $11,000 in other assets. It appears that creditors' claims and costs of administration will be approximately $13,-000, leaving roughly $128,000 for distribution to beneficiaries.

The present dispute has arisen in connection with a partial distribution of $13,000 cash made to each beneficiary on August 10, 1989, without court approval. These distributions occurred ten days after publication of the second notice to creditors.

At the time of the August 10 distributions, Larry Foster's former wife, Ruth Foster, was owner and holder of judgments against Larry for unpaid child support totaling $21,805. On September 19, 1989, pursuant to Ruth's direction, the sheriff garnished the executors, seeking to obtain distributions due Larry for purposes of satisfying the judgments against him. The executors answered the garnishment, admitting that they held funds owed Larry but not specifying any amount or turning over any money. Later, Ruth ordered the

sheriff to levy on Larry's interest in the estate. This was done, an execution sale was held, and Ruth bid the full amount of her judgments plus interest and costs to purchase Larry's share of the estate.

Ruth, claiming to be a person interested in the probate proceedings after succeeding to Larry's interest, challenged the August 10 distributions. She petitioned the district court to require the executors to return the distributions to the estate. The district court granted that request as to the entire $52,000 and, in addition, ordered the executors to pay interest for the period of time the estate was without the money.

The executors urge that they were free to make the distributions on August 10 because the liquid assets greatly exceeded anticipated creditors' claims and costs of administration. They argue that there is no law requiring a personal representative to obtain court approval prior to making distributions to beneficiaries. They also assert that there is no recourse against personal representatives who make such distributions unless it subsequently appears that creditors' claims or costs of administration remain unpaid—a circumstance not involved in the present case.

Ruth Foster, who is the appellee on this appeal, counters the executors' contentions by urging that she is now an "interested person" under Iowa Code section 633.122 (1989), which provides:

> The acts of the fiduciary without prior approval of court after notice, may be contested by any interested person at or before the entry of the order discharging the fiduciary.

She maintains that, as a successor to Larry's interest, she has standing to challenge the action of the executors taken without court approval. She asserts that the district court acted correctly in ordering return of the funds because the distribution was premature.

Although we agree that Ruth is an interested person who may contest the actions of the executors, we do not agree that she has established that the executors' actions contravened any of her legal rights. Her argument is posited, in part, on Iowa Code

section 633.353 (1989). That statute provides:

> Upon application by the personal representative, and after such notice, if any, as the court may prescribe, for good cause shown, the court may enter an order authorizing said personal representative to surrender any of such property to the person or persons who, under the will or under the rules of intestate succession, will ultimately be entitled to such property.

Ruth suggests that this statute imposes a requirement on a personal representative to seek court approval before making a partial distribution and further requires that adequate notice be given to interested parties. The comment promulgated by the bar committee that drafted the Iowa Probate Code refers to the statute as follows:

> New. Since the personal representative must take possession of all real and personal property, this flexible means is provided to take care of a case where there is a specific thing that should be delivered to an heir or devisee at an early date.

Even if we agree with Ruth that the statute has a broader application than the bar comment suggests, it does not offer a reason for requiring the challenged distributions to be returned.

■ At the time of the challenged distributions, Ruth was not an interested party entitled to notice. In addition, we have previously recognized that "[p]lainly there is no statutory requirement for a court order before making ... a voluntary distribution." *Shivvers v. Mueller*, 340 N.W.2d 586, 589 (Iowa 1983). Construing section 633.353 in light of *Shivvers*, we conclude that its provisions are permissive rather than mandatory. Not only is a court order not required for a personal representative to make a distribution to beneficiaries, there is no specified time schedule within which such distributions may be made.

■ In *Shivvers*, we approved the following views expressed in a leading treatise on Iowa probate law:

While generally the personal representative is not required to distribute the estate's property prior to termination, at some point during the administration he may determine that it would be safe to make some distribution or even safe to distribute the entire estate prior to his discharge. His determinations might properly be based upon the economic needs of the distributees or tax minimization possibilities for the estate and its distributees. *While it may no doubt be the general practice to obtain an order of the court authorizing partial distributions prior to the final settlement proceeding, there is no statutory requirement necessitating this practice.* There is also no reason under current law to obtain an order authorizing partial distribution unless other issues as to the appropriateness of a distribution to a particular person are also in question, or the personal representative contemplates a *non pro rata* distribution in hopes to protect himself from a later filed objection that other distributees were harmed thereby.

S. Kurtz, *Iowa Estates* § 15.21 (1st ed. 1981) (emphasis added). A personal representative acts at his or her peril with respect to distributions made without court approval. This peril pertains to the dangers presented by creditors, costs of administration, and claims of other beneficiaries. If a particular distribution so depletes the estate that those interests suffer, then, of course, the personal representative may be surcharged.

In the present case, Ruth's interest in the estate of Virgie Foster is that which she purchased at execution sale. The interest purchased was Larry's remaining right to distributions after the August 10 distribution had already taken place. Return of the challenged distribution is not necessary for the estate to satisfy that interest. It can be fully satisfied by the executors from funds on hand.

In making distribution to Larry and the other three beneficiaries, the executors were merely turning over property that the distributees rightfully owned. As this court recognized more than ninety years ago:

> Under our law the right to a distributive share of personalty in the estate ... vests instanter in the heir upon the death of the owner, and not from the time of distribution made. Distribution gives to the distributee no new title, but only ascertains the property to which title attaches.

*Christie v. Chicago R.I. & Pac. Ry.,* 104 Iowa 707, 709, 74 N.W. 697, 697 (1898). This principle has been most recently considered and reaffirmed in *Sanderson v. Estate of Kisner,* 477 N.W.2d 96, 98 (Iowa 1991).[1]

■ As we recently made clear in *In re Property Seized from Wagner,* 482 N.W.2d 160, 162 (Iowa 1992), a judgment creditor for child support obligations has no interest in the personal property of the judgment debtor prior to the time of levy or garnishment. As a result, Ruth had no interest in the $13,000 distributed to Larry on August 10, 1989. A personal representative is not burdened with the responsibility of protecting the interest of creditors of estate distributees nor does the probate court function in that regard.

■ Finally, we consider Ruth's contention that the absence of a court order on the August 10 distribution caused her to believe that Larry's interest in the estate was his total distributive share. She implies that she was deceived concerning the extent of the interest on which she was bidding at the execution sale.

Viewing the record most favorably to Ruth, we find that at the time of the sale she was aware that some distribution had been made to estate distributees, including Larry, but was unaware of the amount. Armed with some knowledge that distributions had been made, she was in a position to secure a debtor's examination from witnesses with knowledge of the extent Larry's interest in the estate before the execu-

---

1. This principle is currently codified with respect to both testate and intestate situations in Iowa Code § 633.350 (1991). *See Sweet v. Allstate Ins. Co.,* 471 N.W.2d 798, 800 (Iowa 1991).

tion sale occurred. *See* Iowa Code § 630.5 (1989). We think that the doctrine of caveat emptor, which has traditionally been applied to execution sale purchasers, applies to defeat Ruth's argument on this point. *See, e.g., Martens v. Martens,* 234 Iowa 519, 528–29, 12 N.W.2d 201, 205–06 (1944).

We have considered all arguments presented and conclude that the order for return of property should be reversed. We remand the case to the probate court for further proceedings not inconsistent with our opinion.

REVERSED AND REMANDED.