**In re the ESTATE OF David P. BOYD, Deceased.**

**Estate of Berta BOYD, Deceased, Appellant,**

v.

**George Norman and Old Republic Surety Co., Appellees.**

**No. 99–1368.**

Supreme Court of Iowa.

Oct. 10, 2001.

James A. Pugh of Morain, Burlingame & Pugh, P.L.C., West Des Moines, for appellant.

Benjamin B. Ullem and Richard J. Kirschman of Whitfield & Eddy, P.L.C., Des Moines, for appellees.

TERNUS, Justice.

In this case, the district court rejected a claim made by a judgment creditor of the Estate of David Boyd against the administrator of that estate, appellee, George Norman, and his surety, appellee, Old Republic Surety Company. The judgment creditor, appellant, the Estate of Berta Boyd, alleged that the administrator had improperly depleted the estate's assets prior to payment of its claim. The district court ruling was affirmed by the Iowa Court of Appeals. Upon our review, we vacate the decision of the court of appeals, reverse the judgment of the district court, and remand for further proceedings.

I. *Background Facts and Proceedings.*

On July 8, 1990, David and Berta Boyd, husband and wife, were killed in a one-car accident. Both victims died intestate, survived by a single minor child, Jazzber Boyd. David was driving the car, which was owned by Berta. He was legally intoxicated when the accident occurred.

The Boyd automobile was insured through Farm Bureau Mutual Insurance Company. The policy was issued to David, but included Berta and Jazzber as additional insureds. Although the policy in-

cluded liability insurance, that coverage did not apply to injury to any insured or any member of an insured's family residing in the insured's household. Even though the Farm Bureau policy did not cover David's potential tort liability, it did provide uninsured motorist (UM) coverage to Berta and Jazzber.

Shortly after the accident, an estate was opened in Berta's name. Fort Madison Bank & Trust Company was appointed the administrator. The bank was also named Jazzber's conservator. Attorney Robert Johnson III was appointed to act as the attorney for the administrator of Berta's estate, as well as the attorney for Jazzber's conservatorship. Vera Boyd, David's mother, was appointed Jazzber's guardian.

David's estate was opened on August 6, 1990, with Vera serving as the administrator. Notice to creditors for David's estate was published on August 10, 1990, and August 17, 1990. *See* Iowa Code § 633.230 (1989) (requiring publication of a notice to creditors once each week for two consecutive weeks in a local newspaper). Pursuant to the limitations period established in Iowa Code section 633.410, all claims against David's estate were barred unless filed within four months after the date of the second publication of the notice to creditors, or by December 17, 1990.[1]

Early on Vera perceived possible conflicts in her role as the administrator of David's estate and her position as Jazzber's guardian. On October 8, 1990, she was allowed to withdraw as the administrator of David's estate and George Norman, a Keokuk attorney, was appointed in her place.

On March 29, 1991, Norman filed the probate report and inventory. According to the report, David's estate had net assets of $49,049. These assets included a $25,000 death benefit received by David's estate as a result of Berta's death. This death benefit was payable under the death indemnity coverage of the Farm Bureau policy.

During the probate of David's estate, Jazzber's conservator pursued a dramshop claim against the Tin Shed, a tavern that had sold and served David alcoholic beverages after he was intoxicated and immediately prior to the fatal accident. In July 1991, the conservator entered into a structured settlement with the Tin Shed for Jazzber's damages for loss of parental consortium. The present value of that settlement was $50,000.

Farm Bureau was first notified on August 21, 1991, that Berta's estate was considering a wrongful death claim against David's estate and a UM claim against Farm Bureau. This notification was made after the dramshop settlement and well beyond the four-month period for filing claims in David's estate.

On September 5, 1991, Fort Madison Bank, as the administrator of Berta's estate, sued David's estate for the wrongful death of Berta. The bank, as Jazzber's conservator, also filed suit for Jazzber's loss of consortium. In the same lawsuit, Berta's estate sued Farm Bureau for UM benefits. In Farm Bureau's answer, it raised several "affirmative defenses," including an assertion that it was subrogated to Berta's estate for any recovery it had from David's estate.

On May 28, 1993, during the pendency of the wrongful death and UM action, Norman, the administrator of David's estate, disbursed the bulk of David's estate, approximately $49,000, to the conservator of David's sole heir, Jazzber. Norman had

---

1. Although there are exceptions to this limitations period, *see* Iowa Code § 633.410, none are material to resolution of the issues in this case.

not sought nor obtained authorization from the court to make this disbursement. Due to this distribution, there was approximately $1250 left in David's estate at the time the wrongful death and UM claims were tried.

Prior to trial of the wrongful death and UM claims, the parties stipulated that (1) David was legally liable for Berta's injuries, (2) David was an uninsured motorist, (3) under the terms of the Farm Bureau policy, Berta's estate was entitled to UM benefits of $100,000, (4) Berta's estate had suffered damages of $300,000 as a result of her wrongful death, (5) the four-month period for filing claims had expired on December 17, 1990, (6) Farm Bureau was first contacted on August 21, 1991 regarding Berta's estate's claim, (7) Farm Bureau did not file a claim in David's estate, (8) Farm Bureau did not file suit against David's estate asserting its subrogation claim, nor did it file a cross-claim in the pending suit, (9) the only notice of Farm Bureau's subrogation claim was its pleading of this claim in its answer, (10) on May 28, 1993, the administrator of David's estate distributed $49,000 of estate assets to Jazzber's conservatorship, and (11) the administrator made this disbursement because the estate was approaching the statutory three-year limit on the administration of estates. Although the parties agreed that Farm Bureau was liable to Berta's estate for $100,000 in UM benefits, the parties disputed whether Farm Bureau was entitled to offsets for the $50,000 dramshop settlement obtained by Jazzber's conservator and the $49,000 disbursement made from David's estate to Jazzber's conservatorship.

After trial on the stipulated facts, the district court entered judgment on the wrongful death claim in favor of Berta's estate and against David's estate for $300,000. On the contract claim, the court ruled that Farm Bureau's entire liability for UM benefits was offset by the monies received by the conservatorship from the dramshop and David's estate, and by the remaining assets in the estate. Therefore, the court dismissed the UM claim against Farm Bureau. Only Berta's estate appealed. It claimed that Farm Bureau was not entitled to any offset for sums received by Jazzber's conservator.

When Berta's estate's appeal reached our court, we framed the issues as follows:

(1) whether the district court erred by offsetting against Farm Bureau's UM liability the $50,000 Tin Shed structured settlement proceeds and the $49,000 probate disbursement Jazzber's conservator received from David's estate and the balance remaining in David's estate at the time of trial, and (2) whether Farm Bureau is entitled to an offset for any monies Berta's estate received from David's estate pursuant to the $300,000 judgment.

*Fort Madison Bank & Trust Co. v. Farm Bureau Mut. Ins. Co.*, 543 N.W.2d 591, 594–95 (Iowa 1996). We held that the offsets allowed by the district court were not proper because the payments in question were received by Jazzber's conservatorship, not Berta's estate. *Id.* at 595. Because these were separate legal entities, monies received by one could not be offset against Farm Bureau's liability to the other. *Id.*

On the second issue, we concluded that Farm Bureau was entitled to offset its UM liability to Berta's estate by any funds recovered by Berta's estate from David's estate in satisfaction of the $300,000 wrongful death judgment awarded to Berta's estate. *Id.* at 596. A special concurrence foreshadowed the present lawsuit:

[A]lthough the so-called probate disbursement from David's estate to Jazzber's conservator is not in itself a pay-

ment that would reduce the uninsured motorist benefits owed Berta's estate, it may have been an improper depletion of the assets in David's estate in the face of a potential wrongful-death claim by Berta.

The assets transferred to Jazzber, if left in David's estate, would have been available to pay Berta's wrongful-death claim. That payment, if made, would reduce the uninsured motorist benefits owed to Berta's estate. These issues have not been presented on this appeal, and based on the record at the time the appeal was taken, were not ripe for decision.

*Id.* at 596–97 (Carter, J., concurring).

On remand, a judgment for $100,000 plus interest was entered in favor of Berta's estate on its UM claim against Farm Bureau. Following additional legal wrangling with respect to the amount of interest due, Farm Bureau satisfied the judgment.

Once the UM judgment was satisfied, Farm Bureau sought to enforce its subrogation claim. Johnson, the attorney for Berta's estate, declined to pursue collection of the estate's $300,000 judgment against David's estate, claiming he had a conflict of interest. The estate did not object, however, to Farm Bureau proceeding in the name of Berta's estate to collect the judgment to offset Farm Bureau's UM payment.

On January 19, 1999, counsel employed by Farm Bureau, *acting on behalf of Berta's estate,* filed a motion in the probate proceeding seeking judgment against Norman, the administrator of David's estate, and his surety, Old Republic Surety Company, for the sums distributed to Jazzber's conservatorship without court approval. Berta's estate claimed that the distribution was improper and constituted a breach of the administrator's fiduciary duty under

Iowa Code section 633.160. After an evidentiary hearing to the district court, the court ruled that *Farm Bureau* could not recover because *Farm Bureau* had failed to file a claim in David's estate within four months of the second publication of notice to creditors. In addition, it held that *Farm Bureau* was not an interested party authorized to bring suit against the personal representative. As a final matter, the court ruled that Norman had not acted improperly in distributing estate funds to Jazzber's conservatorship.

An appeal by Berta's estate was transferred to the court of appeals. The court of appeals held that Farm Bureau was trying to enforce its own subrogation claim, and agreed with the district court that its claim was untimely because it was filed outside the four-month limit. It also affirmed the district court's finding that Norman had not acted improperly. We granted further review.

## II. *Scope of Review.*

At the hearing of this matter, the district court believed that the case was in equity, despite the parties' assertions that the case was at law. *See* Iowa Code § 633.33 ("Actions ... for the establishment of contested claims shall be triable in probate as law actions....")". As a result, the matter was tried on the premise that it was being heard in equity. In issuing a ruling, however, the district court held that Berta's estate's claim was a contested case, as the parties had contended. Therefore, the court proceeded to decide the claim on the basis that it was a law action.

The scope of review depends on how the case was tried in the district court. *See In re Guardianship of B.J.P.,* 613 N.W.2d 670, 672 (Iowa 2000). We think the trial court correctly determined that the es-

tate's claim was a contested case, triable at law. *See In re Lundvall's Estate*, 242 Iowa 430, 434, 46 N.W.2d 535, 537 (1951) (holding that action seeking accounting and judgment against executor was an action at law). Even though the matter was submitted on the assumption that it would be considered an equity action, Berta's estate has identified no prejudice to it by the trial court's decision to decide the case as a law action, as the estate had urged. Therefore, we consider this appeal as an action at law.

In view of this conclusion, our review is for the correction of errors of law. *See In re Enfield's Estate*, 217 Iowa 273, 274, 251 N.W. 637, 637 (1933) (holding that action against administrator of decedent's estate was not reviewed de novo). The findings of the district court are binding on appeal if supported by substantial evidence. *See In re Lundvall's Estate*, 242 Iowa at 434, 46 N.W.2d at 537.

III. *Is the Claim Against the Administrator Asserted in This Case Barred by Farm Bureau's Failure to File a Claim Asserting Its Subrogation Interest in David's Estate Prior to the Expiration of the Four–Month Statute of Limitations?*

The district court concluded that, although Farm Bureau was purporting to act on behalf of Berta's estate, it was actually seeking to enforce its own subrogation interest. The court ruled that such an action was untimely because Farm Bureau had not filed a claim in David's estate or a cross-claim in the wrongful death/UM action.

The fundamental problem with the district court's analysis is its erroneous focus on the purpose of the present action rather than on the identity of the actual party before it. Although it is true that the goal of this action has always been enforcement of Farm Bureau's subrogation interest, the present suit was filed *by Berta's estate* to collect the judgment held *by Berta's estate.* As the following discussion will explain, the form of this action is entirely proper.

We begin our analysis with the relevant contractual terms. The Farm Bureau policy provides for the insurer's right to recover any UM payments made to an insured:

(1) We [Farm Bureau] have the right to recover our payments from the proceeds of any settlement or judgment the injured person obtains from any party liable for the bodily injury.

(2) The person to or for whom we have made payment shall:

(a) not hurt our rights to recover;

(b) execute any legal papers we need; and

(c) *when we ask, take action through our representative to recover our payments.*

(Emphasis in original omitted and emphasis added.) Pursuant to these policy provisions, Farm Bureau is entitled to recover its UM payment from the proceeds of the judgment obtained by Berta's estate against David's estate. Thus, it is subrogated to Berta's estate's rights with respect to collection of this judgment. In addition, these policy provisions obligate Berta's estate to pursue collection of the judgment owed by David's estate, when asked to do so by Farm Bureau. The policy specifically states that this action may be taken through Farm Bureau's representative.

The present action reflects the rights and obligations of Farm Bureau and Berta's estate under the policy. Berta's estate has cooperated in Farm Bureau's attempt to recover Farm Bureau's UM payment by seeking to collect the judgment with the assistance of Farm Bureau's attorneys.

Although any monies ultimately recovered in this action may accrue to Farm Bureau, depending on the extent of any such recovery, the underlying basis for any recovery will be the judgment owned by Berta's estate, *not* any independent claim held by Farm Bureau against David's estate. Thus, the claim being asserted here is the claim of Berta's estate, to which Farm Bureau is partially subrogated.

That brings us to the next step in our analysis: was Farm Bureau required to assert its subrogation interest independently of any attempts by Berta's estate to collect from David's estate? Not only do we conclude that Farm Bureau was not required to do so, we think it was prohibited from doing so.

■ "Generally, every action must be prosecuted in the name of the real party in interest." *United Sec. Ins. Co. v. Johnson,* 278 N.W.2d 29, 30 (Iowa 1979). This court has consistently held that an insurer who is only partially subrogated to its insured's rights against another is *not* the real party in interest. *See Krapfl v. Farm Bureau Mut. Ins. Co.,* 548 N.W.2d 877, 879 (Iowa 1996); *Wayne County Mut. Ins. Co. v. Grove,* 318 N.W.2d 192, 193 (Iowa 1982); *Glancy v. Ragsdale,* 251 Iowa 793, 801–02, 102 N.W.2d 890, 895–96 (1960).

■ Here, Farm Bureau was originally only a potential subrogee. Even after its payment of UM benefits, it was merely partially subrogated because its payment—$100,000—was less than the judgment against David's estate—$300,000. Thus, Farm Bureau has *never* been the real party in interest with respect to the claim against David's estate. Accordingly, it would have been improper, "absent some inability or unwillingness" of Berta's estate to pursue a claim against David's estate, for Farm Bureau to proceed directly against David's estate. *Farm Bureau Mut. Ins. Co. v. Allied Mut. Ins. Co.,* 580

N.W.2d 788, 790 (Iowa 1998). The undisputed facts in this case establish that Berta's estate was not unwilling or unable to pursue a claim against David's estate. To the contrary, it sued David's estate and obtained a $300,000 judgment.

For these reasons, we find no merit in the argument that the present claim by Berta's estate is barred because Farm Bureau did not file a separate subrogation claim in David's estate. The trial court erred in so ruling.

Before we address the merits of the claim against Norman, we consider an alternative argument made in Norman's brief. Norman argues that not only did Farm Bureau fail to timely file a claim against David's estate, but in addition the wrongful death action filed by Berta's estate was late. He points out that the September 5, 1991 lawsuit filed by Berta's estate against David's estate was filed more than four months after the final notice to creditors. *See* Iowa Code §§ 633.410 (requiring claims to be filed within four months of notice to creditors), 633.415 (allowing the commencement of a separate action in lieu of filing a claim in the estate, but imposing the time constraints of section 633.410 on any such action).

■ Norman spends considerable effort in his brief explaining why he did not waive the statutory limitations period in his defense of the wrongful death case. At this point, however, the rationale for and the wisdom of Norman's defense of the wrongful death claim are not really important. What is essential here is the fact that the district court, in ruling on the wrongful death suit, entered a $300,000 judgment in favor of Berta's estate against David's estate. David's estate did not appeal that judgment and it became final. Therefore, Norman may not collaterally

attack that judgment now by claiming any recovery should have been barred by section 633.410. *See Sanford v. Manternach,* 601 N.W.2d 360, 364 (Iowa 1999) (holding that final judgment "is not subject to collateral attack except on jurisdictional grounds"); *Iowa Coal Mining Co. v. Monroe County,* 555 N.W.2d 418, 440 (Iowa 1996) (stating that final judgment is conclusive "as to the rights of the parties and their privies").

A related argument made by Norman suffers the same fate. He argues that because the wrongful death claim was barred by the statutory limitations period, any resulting judgment was "valid only to the extent that insurance coverage existed for the claim." This argument rests on the language in section 633.410 that states "[t]his section does not bar claims for which there is insurance coverage, to the extent of the coverage." Iowa Code § 633.410. The problem with this argument is that the judgment entered against David's estate is not limited to the available insurance coverage. It is too late now to argue that such a limitation should have been imposed. *See Sanford,* 601 N.W.2d at 364 (holding that error in final judgment "is not reviewable in a collateral proceeding").

As a final matter, we note for the sake of clarity that the matter at issue here is not the validity of Farm Bureau's subrogation interest in any proceeds recovered by Berta's estate in satisfaction of the judgment against David's estate. That matter was settled in our prior decision. *See Fort Madison Bank,* 543 N.W.2d at 596 (holding offset terms of policy were enforceable). Nor is the matter at issue here the validity of Berta's estate's wrongful death claim. As we have pointed out, that matter became final when David's estate did not appeal the judgment rendered against it in the wrongful death action. The mat-

ter at issue here is the claim of Berta's estate for Norman's allegedly wrongful depletion of assets from David's estate. The limitations period of section 633.410 for filing claims *against the estate* has no application to the claims being made here against the personal representative and his bonding company.

IV. *Did the Trial Court Err in Ruling That Farm Bureau Was Not an "Interested Person" Who Could Bring Suit Against the Administrator Under Iowa Code Section 633.122?*

As noted earlier the district court held that the present suit against the administrator was not authorized under Iowa Code section 633.122. This statute provides that an "interested person" may contest any act taken by a fiduciary without prior court approval, provided the challenge is made prior to the fiduciary's discharge. *See* Iowa Code § 633.122. Here, Norman, as the administrator of an estate, is a fiduciary. *See id.* § 633.3(17). It is undisputed that his act of making an interim disbursement of estate assets was done without court approval. In addition, at the time this claim was filed against him, Norman had not been discharged as the administrator. Nonetheless, the trial court held that the claim against Norman was not properly brought because *Farm Bureau* was not an interested person and therefore could not challenge Norman's conduct. As we have already discussed, however, the claim at issue here is that of Berta's estate, not of Farm Bureau. Therefore, it is irrelevant whether Farm Bureau qualified as an interested person at the time of the disputed distribution. The entity that must qualify as an interested person is Berta's estate.

An "interested person" in the context of section 633.122 is one whose

"interests are directly affected by a diminution of the [estate] assets." *In re Estate of Plumb*, 256 Iowa 938, 942–43, 129 N.W.2d 630, 632–33 (1964) (holding that beneficiaries could challenge allowance of claim, citing Iowa Code section 638.122 (1964), which was identical to the present section 633.122). More recently, this court has held that a creditor who succeeds to the interest of a beneficiary is an "interested person who may contest the actions of the executors." *In re Estate of Foster*, 483 N.W.2d 327, 329 (Iowa 1992). Like a beneficiary, a claimant or creditor also has an interest in the assets of the estate. Because those assets will be used to pay the claims of such a person, to the extent such claims are found valid, *see* Iowa Code § 633.426, any distribution of estate assets will directly affect the interest of claimants and creditors. We hold, therefore, that Berta's estate, as a claimant of David's estate, is an interested person within the meaning of section 633.122. Accordingly, the district court erred in holding that the present suit was not authorized under that statute.

### V. Did the Trial Court Err in Holding That Norman Did Not Wrongfully Deplete Estate Assets?

The district court held that Berta's estate had not shown wrongful conduct on the part of administrator Norman. The factual aspect of this ruling was undisputed: Norman distributed $49,000 to Jazzber's conservator without court approval at a time when there was a pending claim against David's estate, namely, the wrongful death action filed by Berta's estate. Thus, the issue for our review is not whether there is substantial evidence to support the court's factual finding that the distribution occurred under these circumstances; it is undisputed that it did. Rather, the issue for our determination is a legal one: whether, under governing legal principles, such action by the administrator subjects the administrator to personal liability.

██ We start with the general principle that the personal representative of an estate "is a trustee acting in a fiduciary relation" between creditors of an estate and devisees, legatees, and distributees of the estate. *In re Smith's Estate*, 240 Iowa 499, 518, 36 N.W.2d 815, 826 (1949). As an "impartial trustee," it is the duty of the personal representative to preserve the assets of the estate for the benefit of creditors and beneficiaries. *Id.; accord In re Estate of Pence*, 511 N.W.2d 651, 652 (Iowa Ct.App.1993).

██ Of crucial importance to the present matter are the relative rights of creditors and beneficiaries. Under the Iowa Probate Code, debts and charges against a decedent's estate have priority over distributions to heirs and beneficiaries of the estate. *See* Iowa Code § 633.436 (providing that shares of distributees must abate for payment of debts and charges); *accord* 31 Am.Jur.2d *Executors and Administrators* § 685, at 346 (1989) ("In the distribution of a decedent's estate, the rights of creditors are prior to those of heirs or legatees; their claims are paid before the balance is paid to legatees or heirs."). It is true that "a court order [is] not required for a personal representative to make a distribution to beneficiaries." *In re Estate of Foster*, 483 N.W.2d at 329. Nonetheless,

[a] personal representative acts at his or her peril with respect to distributions made without court approval. This peril pertains to the dangers presented by *creditors*, costs of administration, and claims of other beneficiaries. *If a particular distribution so depletes the estate that those interests suffer, then, of*

*course, the personal representative may be surcharged.*

*Id.* at 330 (emphasis added); *accord* 31 Am.Jur.2d *Executors and Administrators* § 1015, at 493 ("Executors are required to pay the debts of the decedent to the extent of assets of the estate before paying testamentary dispositions, or else risk personal liability for any unpaid debt."); *cf. In re Estate of Eschweiler,* 202 Iowa 259, 262, 209 N.W. 273, 274 (1926) (affirming trial court ruling that charged administratrix with amount of disallowed disbursements in suit brought by creditors of estate). *See generally Black's Law Dictionary* 1441 (6th ed.1990) (defining "surcharge" as "[t]he imposition of personal liability on a fiduciary for wilful or negligent misconduct in the administration of his fiduciary duties").

 It is apparent from these statutes and authorities that an estate's personal representative has a duty to provide for payment of known creditors and claimants, including those holding unliquidated claims, before depleting estate assets by distributions to heirs, legatees or beneficiaries.[2] Under the undisputed facts of this case, Norman breached this duty: he distributed estate assets without making any provision for payment of the unliquidated wrongful death claim then pending in the estate. As a result, funds that would have been available to pay on the judgment ultimately obtained by Berta's

estate were transferred to the estate's beneficiary.

Norman seeks to justify his conduct on the basis that he had to distribute the estate's assets so he could close the estate within the time prescribed by statute. He relies on Iowa Code section 633.473, which provides that "[f]inal settlement [of an estate] shall be made within three years, after the second publication of the notice to creditors, unless otherwise ordered by the court after notice to all interested parties." Iowa Code § 633.473. As the terms of the statute make evident, however, the three-year period is not absolute; a court may order an estate to remain open beyond this period. In fact, that is exactly what happened here. Five months after distributing the bulk of David's estate, Norman obtained a court-ordered extension of six months due to the pending wrongful death litigation.

Norman also argues that his failure to provide for payment of the claim of Berta's estate was a sound decision because "the administrator would reasonably believe there was insurance coverage." The record does not support this assertion. The action filed by Berta's estate included a claim for *uninsured* motorist benefits. Under the terms of the Farm Bureau policy, UM coverage was available only if the tortfeasor was driving an uninsured motor vehicle, i.e., a vehicle "not insured or bonded for bodily injury liability." Thus, Berta's estate's UM claim was based on the

**2.** Norman cites our cases applying the prudent investor rule of Iowa Code section 633.123 as setting forth the principles of law that should govern his conduct in this matter. We disagree. Berta's estate does not complain of Norman's handling of the funds while they were *in* the estate. Rather, its complaint focuses on the transfer of the funds *out* of the estate. Therefore, the rules and cases governing investments by fiduciaries are inapposite.

We also reject Farm Bureau's contention that the wrongful death claim filed by Berta's

estate should have been handled as a contingent claim under Iowa Code section 633.424, which provides a mechanism for distributing estate assets prior to a contingent claim becoming absolute. This court has held that a tort claim is not a contingent claim, the latter being a claim "that depends for its effect upon some future event which may or may not happen." *Des Moines Transp. Co. v. Haring,* 238 Iowa 395, 399, 27 N.W.2d 210, 212 (1947). An accrued tort claim may be unliquidated, but it is not contingent. *See id.*

fact that no insurance was available to cover the potential liability of David's estate. This belief was well grounded in the facts and the law. Liability coverage for the wrongful death claim was denied based on a "family member exclusion" in the Farm Bureau policy that stated there was no liability coverage "for any bodily injury to any insured." As noted in our recitation of the facts, Berta and Jazzber were insureds under the Farm Bureau policy. Moreover, prior to the time the challenged distribution was made in 1993, this court had repeatedly upheld the validity of the family member exclusion. *See Principal Cas. Ins. Co. v. Blair,* 500 N.W.2d 67, 70 (Iowa 1993) (upholding family member exclusion in homeowners policy against claims that it violated public policy and the right to equal protection); *Walker v. Am. Family Mut. Ins. Co.,* 340 N.W.2d 599, 601 (Iowa 1983) (upholding identical exclusion in auto policy against claim that it violated public policy); *Rodman v. State Farm Mut. Auto. Ins. Co.,* 208 N.W.2d 903, 908 (Iowa 1973) (upholding identical exclusion in auto policy against claims that it violated doctrine of reasonable expectations and was void because it was contrary to public policy). Ironically, our decision in *Blair* upholding the exclusion was rendered a mere nine days before Norman disbursed funds to the conservatorship. Given the facts known to Norman and the case law in Iowa, we do not understand what basis he would have had when he distributed the estate's assets to believe that the estate had insurance coverage for the wrongful death claim pending against it.

Finally, Norman asserts that Farm Bureau cannot complain about any interim disbursement because it failed to file a claim in the estate. As we have already discussed, however, Farm Bureau had no right to make a claim in its own name. In any event, Norman was well aware of Farm Bureau's subrogation rights when he disbursed estate assets to Jazzber's conservatorship because Farm Bureau had asserted those rights in its answer filed in the wrongful death/UM case.

■ Under the circumstances of this case, the rule quoted above from our *Foster* decision applies: when distributions made without court order so deplete the estate that known creditors cannot be paid, the administrator may be surcharged. *See In re Estate of Foster,* 483 N.W.2d at 330; *accord* 31 Am.Jur.2d *Executors and Administrators* § 1062, at 513 (holding that if personal representative "pays legacies or distributive shares while there are unpaid debts, without retaining sufficient assets to pay the debts, he may be personally liable for any deficiency"). The fact that the personal representative may have acted in good faith does not excuse his breach of duty. *See* 31 Am. Jur.2d *Executors and Administrators* § 1062, at 512–13 ("The common-law rule is that volunteer distributions, even those made in good faith, without court order, are made at the representative's own peril."); *cf. In re Conservatorship of Rininger,* 500 N.W.2d 47, 51 (Iowa 1993) (allowing surcharge against conservator for depletion of conservatorship assets, stating that "conservator's sincerity and good intentions" did not excuse his breach of fiduciary responsibility).

As a final matter, we address Norman's argument that this case is like the *Foster* case in which this court rejected the claim of a judgment creditor *of a beneficiary* who sought to surcharge the executors for an early distribution made to the beneficiary without court approval. 483 N.W.2d at 330. In that case, the beneficiary's creditor garnished the executors to obtain the distribution due the beneficiary/judgment debtor. *Id.* at 328. The sheriff then levied on the beneficiary's interest in the

estate and the judgment creditor purchased this interest at an execution sale. *Id.* at 328–29. The creditor subsequently sought to surcharge the personal representative for a distribution to the beneficiary made *before* the garnishment and execution. *Id.* In rejecting this claim, we first held that the creditor was not an interested party in the estate until she succeeded to the beneficiary's interest at the execution sale. *Id.* at 329. At the time she became an interested party, her interest in the estate was merely "that which she purchased at execution sale." *Id.* at 330. Because the execution sale occurred *after* the challenged distribution, the beneficiary's interest in the estate at the time of the distribution was the beneficiary's "*remaining* right to distributions." *Id.* (emphasis added). Therefore, the challenged distribution was not part of the judgment creditor's interest. *Id.*

The present case is clearly distinguishable. Here we are dealing with a creditor of the *estate*, not a creditor of a *beneficiary*. This distinction is crucial because a personal representative has a fiduciary duty to provide for the payment of creditors of the estate before making payments to beneficiaries; no similar duty exists with respect to creditors of a beneficiary. Moreover, at the time of the distribution challenged here, Berta's estate, unlike the judgment creditor in *Foster*, was an interested party who would be adversely affected by the distribution of assets to an estate beneficiary. These assets, had they not been distributed, would have been available to pay the claim of Berta's estate. Thus, in contrast to the situation in *Foster*, the premature distribution here denied the interested party funds to which it would otherwise have been entitled. For these reasons, Norman's reliance on our disposition of the claim in *Foster* is misplaced.

In summary, we hold that given the undisputed circumstances of the distribution made by Norman to Jazzber's conservatorship, the trial court erred in holding that Norman should not be surcharged.

## VI. *What Is the Appropriate Amount of the Surcharge?*

Norman argues that *Farm Bureau* should not be able to recover that portion of the interim distribution representing the $25,000 death indemnity benefit paid to David's estate by Farm Bureau on account of Berta's death. Norman accurately points out that under Farm Bureau's policy, Farm Bureau has no subrogation rights with respect to payments made under the death indemnity coverage.

There are two flaws in Norman's argument. First, the entity seeking recovery here is not Farm Bureau; it is Berta's estate. There is nothing in the policy, nor any rule of law of which we are aware, that would prohibit Berta's estate from accessing the death benefit paid to David's estate to satisfy the judgment held by Berta's estate against David's estate. Any question as to *Farm Bureau's* right to this $25,000 payment is between Berta's estate and Farm Bureau and does not affect the liability of Norman.

Second, the fact that Farm Bureau has no subrogation rights with respect to the death benefit does not affect its subrogation rights as to its UM payment. It is the latter rights Farm Bureau asserts against any funds recovered by Berta's estate on its judgment. Therefore, the fact that the original source of these funds was a death indemnity benefit is no impediment to Farm Bureau's ability to claim the entire $49,000 interim disbursement as an offset against its $100,000 UM payment.

## VII. *Disposition.*

We vacate the decision of the court of appeals and reverse the judgment of the district court. This case is remanded for entry of judgment in favor of Berta's estate against Norman and, to the extent of its bond, against Norman's surety, *see* Iowa Code § 633.181 (making surety jointly and severally liable with fiduciary), in the amount of the funds improperly disbursed plus interest from the date judgment on the wrongful death claim was entered.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT REVERSED AND CASE REMANDED.**

SNELL, S.J.,* participates in lieu of STREIT, J., who takes no part.

* Senior Judge assigned by order pursuant to Iowa Code section 602.9206 (2001).