# IN THE COURT OF APPEALS OF IOWA

No. 21-1214
Filed August 17, 2022

**SAVINGS BANK PRIMGHAR,**
        Plaintiff-Appellee,

**vs.**

**DOUGLAS KELLEY and MARY IVERSON,**
        Defendants-Appellants,

**AMERICAN FRIENDS SERVICE COMMITTEE,**
        Intervenor.
_____

        Appeal from the Iowa District Court for O'Brien County, Nancy L. Whittenburg, Judge.

        Douglas Kelley and Mary Iverson appeal from summary judgment entered in favor of Savings Bank of Primghar. **AFFIRMED IN PART, REVERSED AND VACATED IN PART, AND REMANDED.**

        Steve Hamilton and Molly M. Hamilton of Hamilton Law Firm, P.C., Clive, for appellants.

        Paul W. Deck Jr. of Deck & Deck, L.L.P., Sioux City, and Bruce A. Green of Schultz & Green, Primghar, for appellee.

        Considered by Bower, C.J., and Schumacher and Ahlers, JJ.

**BOWER, Chief Judge.**

Mary Iverson and Douglas Kelley appeal from summary judgment entered in favor of Savings Bank Primghar (Bank) on its request for declaratory judgment and conversion and the denial of Douglas Kelley's application to intervene as executor of Greg Autenrieth's estate (Estate). We affirm in part, reverse and vacate in part, and remand.

## I. Undisputed Facts.

On May 20, 2020, Gregory Henry Autenrieth (Greg) died, a resident of Maricopa County, Arizona.

Before his death, Greg was the sole beneficiary of the Gregory Henry Autenrieth Trust (Trust). The Trust's formative document is the Restated Revocable Living Trust Agreement of Horace H. Autenrieth dated July 18, 2006.[1]

The Trust Agreement provides in part:

> If Greg dies prior to receiving distribution in full of the Trust, the remaining property of the Trust shall be distributed as he may appoint in his last will, with specific reference to the power herein given which power may be exercised in favor of any person or charity or the beneficiary's estate or the creditors of the beneficiary's estate. . . .
> If Greg dies prior to receiving distribution of the Trust, not having exercised the general power of appointment or having exercised it only partially, all of the property as to which such power is not exercised shall be distributed in Article 11 Contingent Beneficiaries.

After Horace died in 2015, the Trust was transferred to the Bank, which became the successor trustee and Greg its sole beneficiary.

---

[1] Greg's sister had also been a trust beneficiary of the Horace H. Autenrieth Survivor's Trust, but upon their father's death in 2015 all property for her benefit was immediately conveyed to her.

In 2016, Greg executed a one-page will, which was delivered to a drive-up window at the Bank via sealed envelope. The will provides:

> 1. I direct that my executor shall first use the personal property of my estate to pay all of my just debts, including the expense of my last illness and burial, and the costs incurred in the administration of my estate
> 2. I give devise and bequeath all of the property of which I may die seized or possessed, be the same real or personal and wheresoever situated, unto Mary Iverson and Douglas Kelley, in equal shares. In the event either beneficiary predeceases me the surviving children of said respective beneficiary shall receive their parent's share.
> 3. I authorize and empower my executors as soon after my death as they in their sole judgment shall determine to sell and convert to cash all of my properties, both real and personal. . . .
> 4. I nominate and ask the court to appoint Douglas Kelley to be the executor of my estate and direct that he be so appointed without bond. If Douglas Kelley should predecease me, or for any other reason shall fail to qualify as executor hereof, I nominate and ask the Court to appoint Mary Iverson to be the executor of this my Last Will and Testament, and direct that she be so appointed without bond.

Upon learning of Greg's death, the Trust's officer, Rodd Holtkamp, reviewed the Trust Agreement and Greg's will and delivered checks to Kelley and Iverson, which included both Trust funds and Greg's personal property. Holtkamp learned this distribution of Trust funds to Kelley and Iverson may have been in error and demanded their return. Kelley and Iverson declined but did agree to place the funds in escrow pending litigation.

Kelley and Iverson acknowledge Greg did not exercise the general power of appointment. They also admit they are not contingent beneficiaries of the Trust.

**II. Background Proceedings.**

The Bank filed suit for conversion. The allegations in the petition state the Bank erroneously distributed $772,923 in funds from the Trust each to Iverson and

Kelley, neither Iverson nor Kelley are beneficiaries of the Trust, and Iverson and Kelley refused to return the funds when asked.

Kelley and Iverson answered, denied funds had been erroneously distributed, and asserted a counterclaim of negligence against the Bank. In response, the Bank asserted Iverson and Kelley have no standing to make the counterclaim and asked it be dismissed. Kelley and Iverson then voluntarily dismissed their counterclaim without prejudice.

The Bank was granted leave to amend its petition to include a request for declaratory judgment. The Bank alleged Greg did not exercise his general power of appointment and thus Kelley and Iverson are not entitled to Trust property; Kelley and Iverson claim that as sole beneficiaries under Greg's will they have the right to distribution from the Trust; and "[t]he adverse claims made by Kelley and Iverson constitute impediments on the administration of the Trust and prevents distribution to the Contingent Beneficiaries. These impediments must be removed."

On January 21, 2021, the Bank moved for summary judgment, asserting Greg did not exercise the general power of appointment as required by the Trust Agreement and, because Iverson and Kelley are beneficiaries under Greg's will but not contingent beneficiaries of the Trust, the Bank was entitled to immediate possession of the funds.

On March 2, the court allowed Iverson and Kelley until March 15 to respond to the motion for summary judgment and set the matter for hearing on the motion for March 26.

On March 12, Kelley and Iverson again sought leave to assert a counterclaim for negligence.

One of the contingent beneficiaries of the Trust filed an application to intervene in the declaratory judgment/conversion suit. The Bank did not resist, observing "it is patently true that the Plaintiff's Petition for Conversion and Declaratory Judgment relates to property to which the intervening party claims an interest as beneficiary under the Autenrieth Trust and that an adverse disposition of the action may result in issue preclusion for the intervening party." "Because the intervenor is a beneficiary with rights to the Trust proceeds, its interests are uniquely different than that of the Plaintiff and are entitled to separate representation."

On March 19, Kelley and Iverson responded to the motion for summary judgment. They "agree[d] that [Greg] did not exercise the power of appointment," but they asserted Greg was not aware of the general power of appointment and had he been made aware, he would have exercised the power in favor of Kelley and Iverson. They argued the Bank "did not carry its duties out as trustee," "claim[ing] that Rodd Holtkamp did not carry out his duty as a trustee" in not providing a copy of the Trust or advising him he could have one and this constituted negligence. They argued there were factual disputes "over these propositions so the court cannot grant summary judgment."

On March 22, Kelley, as executor of the Estate (Executor), filed a petition to intervene to assert a claim of negligence against the Trust.

On March 25, the Bank resisted, contending the Executor had not shown intervention was a matter of right under Iowa Rule of Civil Procedure 1.407(1)(b)

because "granting of Plaintiff's Summary Judgment motion does not in any way affect the claim of the party desiring intervention." And permissive intervention under rule 1.407(2)(b) was not appropriate because "intervenor's claim and this action do not have common questions of law or fact." In any event, the Bank asserted a motion to intervene must be "upon timely application" and this motion was "not 'timely' vis a vis the summary judgment hearing"

After the March 26 hearing, the district court took the matter under advisement. By order dated August 12, the court granted summary judgment in favor of the Bank, concluding Greg had not exercised the power of appointment. The court wrote:

> Paragraph 2 of Greg's Will, in conjunction with evidence provided in the record, does not rise to a level to exhibit a "manifest and clear" intent to exercise power of appointment. The court also concludes that Greg did not intend to exercise the power. Thus, the Trust assets must be returned and distributed to the contingent beneficiaries according to the terms of the Trust. The Defendants cannot maintain their cause of action against the Bank and therefore their claim must be dismissed. Finally, the intervention claim made on behalf of the Estate is not a viable claim where it has no common questions of law or fact with the present suit and the interests of the Estate may be adequately pursed in separate litigation.

On appeal, Kelley and Iverson contend the court erred in finding Greg did not intend to exercise the power of appointment and in denying Kelley, as Executor, the right to intervene.

**III. Scope and Standard of Review.**

"We . . . review rulings granting summary judgment for correction of errors at law." *Garrison v. New Fashion Pork LLP*, 977 N.W.2d 67, 76 (Iowa 2022). In ruling on a motion for summary judgment, the court views the facts in the light most favorable to the nonmoving party, including "every legitimate inference reasonably

deduced from the record." *Id.* (citation omitted). "Summary judgment is proper when the moving party has shown there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Id.* (citation omitted); *see also* Iowa R. Civ. P. 1.981(3).

*A. Declaratory judgment/conversion.*

We point out the limited nature of the Bank's motion for summary judgment. The Bank asserted only:

> 1. By not exercising his Testamentary Power in his Will, [Greg] elected not to appoint distribution of the Trust property in favor of his estate beneficiaries.
> 2. Without being appointed to receive the Trust property, Kelley and Iverson cannot claim it as theirs, and the refusal to return it constitutes conversion.

The narrowness of the issues was recognized by the district court: "The Trustee Bank sought an interpretation of the Trust by way of its declaratory action and a return of the mistakenly distributed funds through [its] conversion claim."

Iverson and Kelley claim entitlement to Trust property as beneficiaries under Greg's will. The Trust Agreement provides, "If Greg dies prior to receiving distribution in full of the Trust, the remaining property of the Trust shall be distributed as he *may appoint in his last will, with specific reference to the power herein given.*" (Emphasis added.) But there is no reference in Greg's will to the general power of appointment, which is not surprising where all agree Greg was not aware of the Trust Agreement term.

Fundamentally, it is undisputed Greg did not exercise his general power of appointment in his will. *See Bussing v. Hough*, 21 N.W.2d 587, 590 (Iowa 1946) ("In the absence of statute it is generally held that a power of appointment is not

executed by the residuary clause in a will unless an intent to exercise such power appears in addition thereto from the terms of the will."). Consequently, Iverson and Kelley as beneficiaries under the will have no interest in the Trust funds that were distributed to them. The funds must be returned to the Trust. To this extent, the Bank is entitled to judgment as a matter of law on its conversion claim.

But the district court's ruling includes language that seemingly exceeds the questions presented. The court makes findings as to Greg's intent:

> The record establishes that the Bank never gave Greg a copy of the Trust Agreement. Holtkamp . . . and Greg did meet in April 2016 to go over the terms of the Trust—Holtkamp's deposition indicates that it is unlikely that at this meeting the Bank informed Greg of his testamentary general power of appointment under the Trust. Greg subsequently delivered his Will to the Bank—Holtkamp testified that he went over the Will. Hence, Holtkamp was aware that Greg's Will did not explicitly refer to disposition of property held by the Trust. Nevertheless, the record does not show any subsequent communication between the Bank and Greg where the Bank informed Greg that Greg could exercise a power of appointment in the Will.
>     . . . .
> Second, Greg's Will makes no reference to the Trust or the property. Third, Greg had other property to devise—Kelley and Iverson each received $33,777.50 out of Greg's personally-owned property. The Will is not ineffectual without considering the property held by the Trust.
>     . . . .
>     . . . . Given that Greg did not ever request information or participate, as the Trust Agreement allows him to, it is also reasonable to infer *that Greg intended not to do more than receive distributions from the Trust and not to disturb whatever Horace had planned with the remainder*. Horace's plan was to leave the remainder to the contingent beneficiaries should Greg not exercise the power.

(Emphasis added.)

The determination of intent generally generates a fact question that cannot be decided on summary judgment. *See Walsh v. Nelson*, 622 N.W.2d 499, 505

(Iowa 2001) (noting "*the determination of the parties' intent is a question of fact*" (citation omitted)). We agree with Iverson and Kelley the court erred in making findings as to Greg's intent.

We also find unnecessary and confusing language in the court's ruling. First, the court announces "as a matter of law, the Trust property is to be distributed to the contingent beneficiaries of the Trust because Greg did not exercise the general power of appointment, in whole or in part, as provided for by the Trust." However, it then notes the listed beneficiaries are entitled to receive the Trust assets "*in absence of other affirmative action.*" (Emphasis added.) We are not convinced the ultimate distribution of the funds should have been decided by the district court. Such a declaration is contrary to the court's statements in denying intervention finding "[t]he disposition of this action will not impair or impede the Estate's ability to pursue its breach of fiduciary duty claim." And the Bank has argued summary judgment "does not in any way affect the [Estate's] claim" of negligence. To the extent the district court's ruling can be read to declare who had ultimate rights to distribution of the Trust assets, we conclude the district court erred. Any statements or rulings by the district court concerning Greg's intent and ultimate distribution are vacated.

*B. Motion to intervene.*

On appeal, the defendants also challenge the denial of the application to intervene by Kelley as Executor. We review the denial of a motion to intervene for legal error. *In re H.N.B.*, 619 N.W.2d 340, 342 (Iowa 2000).

Iowa Rule of Civil Procedure 1.407 governs interventions. Intervention is "of right,"

> When the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Iowa R. Civ. P. 1.407(1)(b). "The test of right of intervention is 'interest', not necessity. An interested party may intervene at any time prior to trial." *Rick v. Boegel*, 205 N.W.2d 713, 717 (Iowa 1973) (internal citation omitted). "To test legal sufficiency of a petition of intervention, all allegations of that petition are assumed true." *Id.*

The district court denied intervention, stating:

> The only commonality between the two suits is the Plaintiff Savings Bank Primghar. The Trustee Bank sought an interpretation of the Trust by way of its declaratory action and a return of the mistakenly distributed funds through is conversion claim. Those claims both sought answers to the question of *how* the trust was to be interpreted where Greg did not exercise his power of appointment. The Intervenor Estate's claims are centered on *why* Greg did not exercise his power of appointment which call into question the performance of the fiduciary's duties.
>      The disposition of this action will not impair or impede the Estate's ability to pursue its breach of fiduciary duty claim. Accordingly, the court is unable to conclude that the Estate has a right of intervention under [rule] 1.407(1).
>           . . . .
>           . . . . The questions of fact surrounding why Greg did not exercise his power of appointment are central to the Intervenor's claims but have no bearing on the original action which is only concerned with how the Trust property is to be distributed where the facts show that Greg did not exercise his power of appointment. The reasons underlying Greg's failure to exercise his power of appointment do not bear on the resolution of the original action and the Estate does not need to intervene to protect the interests it wishes to assert in a negligence claim against the Trustee Bank. For those reasons, there is no basis for permissive intervention.

The Executor claims an interest in the *distribution of the proceeds* of the Trust by way of the counterclaim for negligence. "[T]he personal representative of an estate 'is a trustee acting in a fiduciary relation' between creditors of an estate and devisees, legatees, and distributees of the estate." *In re Est. of Boyd*, 634 N.W.2d 630, 639 (Iowa 2001) (citation omitted). "As an 'impartial trustee,' it is the duty of the personal representative to preserve the assets of the estate for the benefit of creditors and beneficiaries." *Id.* If the Executor is successful in its claim, the Estate may be entitled to distribution of Trust funds.

Assuming all the allegations of the counterclaim are true, as we must, we conclude the district court erred in denying the Executor's application to intervene. We note the Bank prayer for relief in its petition asked the court

> decree that [Greg] failed to exercise his general power of appointment as provided in the Gregory Henry Autenrieth Trust and, *in absence thereof, distribution of the Trust shall be to the Contingent Beneficiaries and that Defendants after asserting any objections that they may have to the distribution*, hereafter be barred and estopped from having or claiming any further rights to those distributions.

(Emphasis added.) We also observe that in response to the contingent beneficiary's application to intervene, the Bank acknowledged "it is patently true that the Plaintiff's Petition for Conversion and Declaratory Judgment relates to property to which the intervening party claims an interest as beneficiary under the Autenrieth Trust and that an adverse disposition of the action may result in issue preclusion for the intervening party."

The Executor also has an interest in the distribution of the Trust funds. Under rule 1.407(1)(b), the Executor "is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that

interest" because the Bank must distribute the Trust proceeds and has asserted that distribution would be "after [the defendants] assert[ed] any objections they may have to the distribution." The district court erred in denying the Executor's application to intervene.

We affirm the decree that Greg failed to exercise his general power of appointment and the Bank is entitled to the possession of the funds distributed to Iverson and Kelley because they are not contingent beneficiaries under the Trust.

We reverse and vacate the court's ruling to the extent it decreed the ultimate disposition of the Trust funds. We find the district court erred in denying the Executor's motion to intervene. We remand for further proceedings.

**AFFIRMED IN PART, REVERSED AND VACATED IN PART, AND REMANDED.**